Sonya A. ALMENDRAL, Plaintiff,

v.

NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., Defendants.

No. 80 Civ. 0129 (JES).

United States District Court,
S.D. New York.

July 29, 1983.

Krishna M. Vempaty, New York City, for plaintiff.

Robert Abrams, Atty. Gen., of the State of N.Y., New York City, for defendants; Thomas P. Dorsey, Sall J. Sidoti, Robert L. Schonfeld, Asst. Attys. Gen., New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge.

Plaintiff, Sonya A. Almendral, a brown-skinned naturalized American citizen of Filipino origin, commenced this employment discrimination action against the New York State Office of Mental Health, the New York State Department of Civil Service, the Manhattan Psychiatric Center ("MPC"), the Kingsboro Psychiatric Center ("KPC"), Dr. Gabriel Koz, John Frangos, L. Smith, Morton B. Wallach, Helen Houston and Edward Weeks, Jr., alleging that defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2, 3 (1976) ("Title VII"), 42 U.S.C. § 1981 (1976), 42 U.S.C. § 1983 (Supp. III 1979), the fourteenth amendment, the New York State Constitution and New York's Civil Service Law, Civil Rights Law and Executive Law, in that they discriminated against her because of race and national origin.[1] She seeks a declaratory judgment that she was entitled to be named Chief of Mental Health Treatment Services at MPC as early as July of 1978, as well as an award of back pay, damages for mental and emotional suffering and reasonable costs and attorney's fees.

Plaintiff first obtained employment at MPC in 1969 as a psychiatric social worker. Deposition of Sonya Almendral at 4. After three months she was promoted to Social Worker Supervisor and, in 1974, she was promoted to the position of Mental Hygiene Treatment Team Leader. *Id.*

On September 10, 1977 New York State gave two qualifying examinations for the position of Chief of Mental Health Treat-

---

1. Plaintiff has withdrawn her claim of sex dis- crimination. Tr. at 9.

ment Services ("Unit Chief"), a promotional examination for persons, such as plaintiff, who were already employed and in the civil service line for promotion, and an open competitive examination for others desiring the position.[2] Tr. at 14–15; see N.Y.Civ. Serv.Law §§ 51, 52 (McKinney 1983). The tests were identical. Tr. at 23. Plaintiff took the promotional examination, scoring 80.6% for a rank of 19th on the promotion eligible list. Plaintiff's Exhibit 5 (hereinafter "Ex. ———"). Both lists were certified on May 3, 1978. See Affidavit of William P. Gleason, Answers 9a, 9b (hereinafter "Gleason Affidavit").

Pursuant to New York's Civil Service Law appointments are made in the following manner. At the request of an agency with a vacancy, or upon the appointment of an acting, temporary or provisional employee, or in the event that a non-permanent incumbent already is placed in an available position, eligible lists, that is, lists of persons who have passed the promotional and open competitive qualifying examinations, are certified to the agency. See N.Y.Civ. Serv.Law § 60; N.Y.Admin.Code tit. 4, § 4.1 (1983); Gleason Affidavit, Answer 12b. The persons on the lists are then canvassed by the agency to ascertain whether they wish to be considered for the vacancy at the facility. Tr. at 208–09, 271, 305–08.

Generally, the promotion eligible list is canvassed first. Id. Those persons who express an interest in accepting the position are interviewed and, following the interviews, final lists of acceptors are prepared. Tr. at 271. If there are at least three acceptors on the promotion eligible list, the appointing authority must appoint one of the three highest ranking persons on that list or leave the position vacant ("Rule of

Three").[3] N.Y.Civ.Serv.Law § 61; N.Y.Admin.Code tit. 4, § 4.2; Tr. at 183–84; see D'Amico v. Leonard, 64 A.D.2d 626, 628, 406 N.Y.S.2d 876, 878 (2d Dep't 1978). If, however, there are less than three acceptors on the promotion eligible list, the appointing authority may select any of the three highest ranking acceptors from the open competitive list. Tr. at 277; see 1957 Op. Att'y Gen. 193–94.

Plaintiff was first canvassed for promotion in July of 1978, at which time there were four Unit Chief vacancies at MPC, at least some of which were filled by non-permanent appointees. Tr. at 162, 184–88. Of those persons on the promotion eligible list who were canvassed, ten indicated a willingness to accept the position plaintiff sought. Tr. at 272. Of those ten, plaintiff was ranked fourth and was not required to be considered pursuant to the Rule of Three. Id. at 272; N.Y.Civ.Serv.Law § 61.-1; N.Y.Admin.Code tit. 4, § 4.2(a). In any event, none of the top three acceptors was chosen and all four positions remained vacant. Tr. at 184, 187.

Plaintiff was next canvassed for promotion at MPC in November or December of 1978. Tr. at 49–50. The promotion eligible list certified to the MPC by the Department of Civil Service contained twelve names. Tr. at 273. Of those twelve, only two persons, including plaintiff, indicated a willingness to accept the position. Defendants' Ex. B. Since there were less than three acceptors on the promotion eligible list, defendants selected Gayla Blackwell, a black woman from the open competitive list. Tr. at 207, 274–75.

Plaintiff contends, however, that defendants engaged in conduct which was designed to insure that there would be less

---

**2.** Chief of Mental Health Treatment Services is the civil service title for one of the unit chief positions in plaintiff's civil service line. See Tr. at 20, 180–82; Plaintiff's Ex. 1. Candidates who are successful in passing the promotional or open competitive examinations are qualified to be considered for all unit chief positions in that line. See Plaintiff's Ex. 1.

**3.** Section 61 of the New York Civil Service Law provides, in pertinent part, "[a]ppointment or promotions from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion ...." N.Y.Civ.Serv.Law § 61.1 (McKinney 1983).

than three acceptors on the promotion eligible list. More particularly, she alleges that Dr. Koz, Director of MPC, asked James Amorese to decline to accept the position so that he could reach Gayla Blackwell on the open competitive list. Tr. at 232–33, 235. Plaintiff also contends that the agency failed to reschedule a canvass interview for Margaret Marks, whose canvass interviewer did not appear at the appointed time, notwithstanding the fact that Ms. Marks had requested it to do so. Plaintiff's 9(g) Statement and Memo of Law at 2–3; see Plaintiff's Ex. 36; Tr. at 486–87.

Following the second canvass in 1978, plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on March 22, 1979 and with the New York State Division of Human Rights ("NYSDHR") on May 11, 1979, alleging that she had been denied the promotion because of her national origin. Tr. at 140–42; Plaintiff's Ex. 10.

On April 17, 1979, shortly after she filed her discrimination charges with the EEOC and the NYSDHR, plaintiff was appointed to a Unit Chief position at KPC for a twelve-week probationary period. Pre-Trial Order at 3; Tr. at 197; Amended Complaint, para. 6; see generally N.Y.Civ. Serv.Law § 63. During that time, she received two unsatisfactory performance evaluations. Defendants' Exs. H, I.

Following the second unsatisfactory evaluation plaintiff again filed charges with the EEOC and the NYSDHR, alleging that she had been harassed and intimidated in retaliation for filing the original charges. Plaintiff's Ex. 12; Tr. at 142–45. Plaintiff was terminated from her Unit Chief position at KPC at the close of her probationary period. See Tr. at 71.

On July 29, 1979, shortly before she was terminated, plaintiff requested that her name be restored to the promotion eligible list for all facilities. Tr. at 74; Plaintiff's Ex. 13. Following her termination at KPC, she returned to her position as Team Leader at MPC. See Tr. at 78–79. Although a vacancy for a Unit Chief existed at MPC in August or September of 1979, plaintiff's name was not restored to the list for that facility until January of 1980.[4] Tr. at 79; Defendants' Ex. G. In the interim, James Amorese, a white Italian who ranked 35th on the promotion eligible list, was appointed to the position. Plaintiff's Ex. 5.

Plaintiff was next canvassed for promotion in March of 1981. Tr. at 89. While she was among the three highest ranking acceptors from the promotion eligible list and, therefore, qualified to be considered under the Rule of Three, defendants appointed Margaret Marks, a white woman, who was one of the top three acceptors and ranked 17th on the promotion eligible list.[5] Tr. at 89–90; Plaintiff's Ex. 5. Subsequently, in April 1982, plaintiff was promoted to a Unit Chief position at MPC. Tr. at 91–92; Pre-Trial Order at 4.

The EEOC and the NYSDHR found no reasonable basis to support either plaintiff's claim of discrimination based on national origin or her claim of retaliation. Defendants' Exs. K, L. Following the issuance of a Notice of Right to Sue, plaintiff commenced the instant action. The gravamen

---

4. Plaintiff's name was restored to the promotion eligible list for all facilities except MPC and KPC on August 24, 1979. Tr. at 131; Defendants' Ex. F. John Frangos, Business Officer at MPC, testified that the Department of Civil Service had informed him that its policy is normally not to restore persons to the list for facilities where they have been demoted. Tr. at 321; see N.Y.Admin.Code tit. 4, § 4.5(g).

5. Plaintiff was also canvassed for a promotion in November 1981. Since there were less than three acceptors on the promotion eligible list, defendants selected Judith Nigro, a white woman, from the open competitive list. Tr. at 279–81. While plaintiff contends that there were three acceptors on the promotion eligible list when Ms. Nigro was selected, she appears to be mistaken. See Plaintiff's Ex. 28; Tr. at 279–81. Moreover, with regard to this canvass, plaintiff does not allege that defendants engaged in conduct designed to insure that there would be less than three acceptors on the promotion eligible list. In any event this claim was not encompassed within the claim filed with the EEOC and the Court therefore lacks subject matter jurisdiction over any Title VII claim based upon this incident. See infra pp. 6–7.

of her complaint is that defendants discriminatorily deprived her of the opportunity to be considered for both permanent and temporary appointments to a Unit Chief position by (1) enforcing the Rule of Three against her because of her race and national origin while at the same time placing white employees in acting, temporary and provisional positions and permitting them to retain those positions in violation of state law; [6] and (2) failing to timely restore her name to the promotion eligible list for MPC. She also alleges that her services as Unit Chief at KPC were terminated either because of the aforesaid discrimination or in retaliation for filing charges with the EEOC.

To the extent that plaintiff's Title VII claim is premised on racial discrimination and/or on defendants' failure to appoint or promote her at any time other than following the November 1978 canvass, the Court lacks subject matter jurisdiction to consider those claims since they were never presented to or investigated by the EEOC and were not within the scope of the EEOC investigation which reasonably could have been expected to grow out of the complaint filed with the EEOC. Plaintiff's Exs. 10, 12. *See Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Grant v. Morgan Guaranty Trust Co.,* 548 F.Supp. 1189, 1191 (S.D.N.Y.1982); *Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1337 (S.D.N.Y.1978), *aff'd mem.,* 607 F.2d 995 (2d Cir.1979); *Meyer v. MacMillan Publishing Co.,* 85 F.R.D. 149, 151 (S.D.N.Y.1980). Accordingly, plaintiff's Title VII failure to promote claim is limited to the question of whether defendants discriminatorily denied her a promotion in January 1979 because of her national origin.

Plaintiff in a Title VII action has the initial burden of demonstrating the existence of a prima facie case. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802,

93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This burden is met by establishing (i) that she belongs to a protected class, (ii) that she applied for and was qualified for the position for which the employer was seeking applicants, (iii) that, notwithstanding her qualifications she was rejected, and (iv) that, following her rejection, the employer continued to seek applicants with the plaintiff's qualifications. *Id.* The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's rejection. *Id.*

Plaintiff is a member of a protected class and concededly applied for promotion. 42 U.S.C. § 2000e-2(a); Tr. at 21–26; Pre-Trial Order at 3. Moreover, qualification for a position under the New York Civil Service Law is established whenever an applicant meets the statutory requirements. The New York Civil Service Law provides that the three highest ranking acceptors on the promotion eligible list are qualified to be considered for promotion. Plaintiff offered evidence that, in January 1979, but for defendants' conduct, she would have been among the three highest scoring acceptors on the promotion eligible list and therefore qualified to be considered pursuant to the Rule of Three. In addition, there was evidence that Dr. Koz pressured James Amorese to decline the position and that Margaret Marks' canvassing interview was not rescheduled, as she requested. Tr. at 232–33, 235; Plaintiff's Ex. 36. The Court therefore finds that plaintiff has carried her burden of proving that she was qualified for the position. *See* N.Y.Civ. Serv.Law § 52.

It is also clear that the employer continued to seek applicants for the position which plaintiff sought, and indeed appointed Gayla Blackwell to that position. Tr. at 184–87. What is not so clear is that the agency continued to seek someone with plaintiff's statutory qualifications. Gayla Blackwell was not appointed from the pro-

---

**6.** Plaintiff has proffered evidence that at least five persons were unlawfully appointed to and retained in temporary, provisional or acting positions. *See e.g.,* Tr. at 29, 248, 256–58, 260–

**61.** She argues that these appointments are both evidence of proscribed discrimination and violations of the New York Civil Service Law.

motional list and therefore did not have the same statutory qualifications as plaintiff. Moreover, the same Civil Service Law which established plaintiff's qualifications also afforded the agency the option of selecting no one from the promotional list. *D'Amico v. Leonard,* 64 A.D.2d at 628, 406 N.Y.S.2d at 878; *Bailey v. Kern,* 177 Misc. 904, 905, 32 N.Y.S.2d 386, 387 (Sup.Ct. N.Y.County, 1942); Tr. at 272.

■ However, even assuming arguendo that plaintiff has established a prima facie case the Court has no difficulty in concluding that the defendants have met their burden of establishing a legitimate, nondiscriminatory reason for plaintiff's rejection. Dr. Koz testified that his reason for pressuring Amorese to decline to accept the position was his desire to appoint Gayla Blackwell who, in his opinion, was the best, most qualified person for the position.[7] Tr. at 183, 233, 235. The Court finds that testimony credible. The record demonstrates that Dr. Koz was deeply concerned with the qualifications of his staff. For example, following the July 1978 canvass, and notwithstanding that there existed four vacancies at MPC for Unit Chiefs, Dr. Koz declined to appoint any of the three highest ranking acceptors on the promotion eligible list to fill these vacancies because he felt that none was qualified. Tr. at 162, 183–84. It is also clear that his failure to fill those vacancies was not motivated by any discriminatory attitude toward plaintiff because plaintiff was not among the top three acceptors. Tr. at 184.

Moreover, Ms. Blackwell was clearly the superior candidate for the position. She achieved a perfect score on the qualifying examination, which score was nearly twenty points higher than plaintiff's, and her work was well thought of while plaintiff's

was viewed as poor.[8] Tr. at 183, 198–99; Plaintiff's Ex. 4. Accordingly, the Court finds that, while some of the defendants may have deprived plaintiff of her statutory right to be considered for the promotion in violation of the Civil Service Law, they did so because they felt that she was not qualified to do the job. It follows that plaintiff was not discriminated against because of her national origin.

■ The Court further finds that defendants have also established a legitimate, nondiscriminatory, nonretaliatory reason for plaintiff's termination as Unit Chief at KPC. Plaintiff's first unsatisfactory evaluation indicated, *inter alia,* that her performance was only minimally acceptable in the areas of organization of staff, systems of accountability, conduct of investigations and response to staff demands, and that her performance had reached a minimally acceptable level only because she had been repeatedly "spoon fed" by various hospital personnel. Defendants' Ex. I. Moreover, the evaluation also characterized plaintiff's performance as unsatisfactory in the areas of primary patient care and communication and dealings with staff, co-workers and superiors. *Id.*

The Court finds that that evaluation was made in good faith and constituted an honest assessment of plaintiff's capacities. This is especially true since it was prepared by plaintiff's supervisor, Helen Houston, before she knew that plaintiff had filed charges with the EEOC and the NYSDHR. The Court therefore concludes that plaintiff has failed to establish by a preponderance of the evidence that defendants terminated her in retaliation for filing charges with the EEOC and the NYSDHR.[9] Affidavit of Helen Houston Appended to Defendants' Notice of Motion filed October 27, 1980 at 2.

---

**7.** Defendants proffered no evidence regarding their reason for failing to reschedule Ms. Marks' interview. It may well have been inadvertent, but given Dr. Koz's desire to appoint Gayla Blackwell, the Court may also reasonably infer that that failure was motivated by the same thinking that caused him to induce Mr. Amorese not to accept the position.

**8.** Plaintiff's supervisor's evaluations reflected his belief that her work at MPC was good.

However, this difference of opinion as to Ms. Almendral's capabilities is not sufficient to persuade the Court that defendants have failed to establish that Dr. Koz's assessment was made in good faith. Plaintiff's Exs. 2, 8.

**9.** The second evaluation, which was prepared after plaintiff's supervisor became aware of plaintiff's EEOC charge, indicated that plaintiff's judgment was poor in that she failed to perceive problems and utilized staff inefficient-

■ Plaintiff next alleges that defendants' conduct violated 42 U.S.C. § 1981. In order to establish a violation of section 1981, plaintiff must demonstrate that she was accorded less favorable terms of employment than white persons, either because of defendants' intentional racial prejudice or because of a facially neutral employment practice which had a discriminatory impact upon a racial minority,[10] *i.e.,* that plaintiff was deprived of the equal protection of the laws because of her race. *See Ganguly v. New York State Department of Mental Hygiene-Dunlap Manhattan Psychiatric Center,* 511 F.Supp. 420, 425 (S.D.N.Y. 1981).

Plaintiff has plainly failed to carry that burden. The record is devoid of evidence that plaintiff was rejected for promotion or deprived of the opportunity to be considered for promotion because of defendants' intentional racial prejudice. Indeed, the Court has specifically found that the officials involved acted in the good faith belief that there was a better qualified candidate for the position, *i.e.,* Gayla Blackwell, a black woman, who was appointed following the 1978 canvass. The Court has also found that those officials had honestly concluded that plaintiff's performance was inadequate.

Moreover, twenty-eight percent of the persons appointed to high echelon positions at MPC from 1977 to the time of trial were black. *See* Defendants' Ex. M; Tr. at 195–96. In view of these facts, the Court is compelled to conclude that plaintiff's rejection had nothing whatsoever to do with her race. The fact that a small number of provisional, acting and temporary employees are white is not sufficient to persuade the Court that defendants have manipulated the laws for the benefit of white persons or that a facially neutral employment policy has discriminatorily impacted upon a racial minority. Accordingly, the Court finds that plaintiff has failed to establish a violation of section 1981.

■ Plaintiff next argues that defendants have violated 42 U.S.C. § 1983. To establish a violation of that statute plaintiff must demonstrate that a person acting under color of state law deprived her of a right, privilege or immunity protected by the constitution or laws of the United States. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

Plaintiff has also failed to discharge that burden. Even assuming arguendo that defendants manipulated the Rule of Three and the statutes regulating temporary appointments to plaintiff's disadvantage and that they wrongfully withheld her name from the promotion eligible list at the conclusion of her probationary period at KPC,[11] that conduct impacted upon no property or liberty interest protected by section 1983. Plaintiff has no legitimate claim of entitlement to the position she seeks, and the statutes in issue and upon which she relies do not vest her with one. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Nor did plaintiff establish a violation of section 1983 based on an equal protection theory since

---

ly, that she conducted incomplete investigations and that she reached conclusions before all the facts had been ascertained. Defendants' Ex. H.

10. Since there is no exhaustion of remedies requirement pursuant to § 1981, the Court may properly consider plaintiff's claim of racial discrimination. *Goss v. Revlon,* 548 F.2d 405, 407 (2d Cir.1976); *Grant v. Morgan Guaranty Trust Co.,* 548 F.Supp. 1189 (S.D.N.Y.1982). However, to the extent that plaintiff's § 1981 claim is premised on discrimination because of national origin, it must be rejected since such discrimination, even if proved, does not violate § 1981. *Rios v. Marshall,* 530 F.Supp. 351 (S.D.N.Y.1981).

11. Pursuant to N.Y.Admin.Code tit. 4, § 4.5(g), a probationer whose employment is terminated may request that his name be restored to the eligible list, which request will be granted if the Department of Civil Service "determines that the probationer's service was such that he should be given a second opportunity for appointment." *Id.* Since restoration of a name to the promotion eligible list is entirely discretionary, the mere fact that plaintiff's name was not restored to the list for all facilities any sooner than January of 1980 does not establish that the Department of Civil Service unlawfully or arbitrarily withheld her name, or discriminated against her because of her race or national origin.

that theory requires some proof that plaintiff was discriminated against by reason of her race or national origin. The evidence was totally insufficient to establish such discrimination.[12] *See* discussion *supra.*

Moreover, a section 1983 action for damages may not properly be predicated upon alleged violations of the Civil Service Laws. In *Bush v. Lucas,* —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court declined to permit a federal employee, whose first amendment rights had been violated, to sue his employer for damages under section 1983. In making its holding, the Court relied on the existence of a comprehensive statutory scheme which provides for review of the agency's action and for remedies designed to make the victim of unlawful agency action whole.

■ Those considerations apply with equal force to the New York Civil Service Laws. Article 78 of the Civil Practice Law and Rules provides both a vehicle for testing the lawfulness of agency action and remedies for persons injured by unlawful action. N.Y.Civ.Prac.Law §§ 7801–7806 (McKinney 1981 & Supp. 1982–1983). This Court sees no reason to depart from the reasoning in *Bush* and to accord state employees more protection than the Supreme Court has seen fit to afford to similarly situated federal employees.

■ Finally, there remains for consideration plaintiff's pendent state claims. Plaintiff contends that defendants' conduct violated sections 52, 61 and 64 of the New York Civil Service Law, and article V, section 6 of the New York State Constitution, and that, by virtue of these violations, she is entitled to various forms of relief including damages for pain and suffering. While plaintiff would concededly have standing to challenge the agency's action in an Article 78 proceeding, *see Burke v. Sugarman,* 35 N.Y.2d 39, 315 N.E.2d 772, 358 N.Y.S.2d 715 (1974), it is not clear whether a state cause of action for damages for violation of those statutes exists. Indeed, although the Court

requested plaintiff to provide authority for the proposition that such a state cause of action for damages exists, none has been proffered.

There is no sound reason why this Court should retain pendent jurisdiction to resolve this and the other issues of state law raised by plaintiff's state law claims. At post-trial oral argument plaintiff's counsel asserted that plaintiff would not be barred from bringing an Article 78 proceeding in the state courts because defendants' conduct constituted a continuing wrong. Moreover, the substantial questions raised by plaintiff's pendent state claims are more properly resolved in the state courts. The Court, therefore, declines to exercise pendent jurisdiction over plaintiff's state claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Accordingly, defendants are entitled to judgment on plaintiff's federal claims. The pendent state claims are dismissed. Defendants shall have costs. Each party shall bear its own attorney's fees.

It is SO ORDERED.

---

**12.** Nor could plaintiff make such a showing since she testified that there were no other persons of Filipino origin eligible for the Unit Chief position. Tr. at 81–82. Moreover, the record is devoid of evidence regarding the number of Filipinos in acting, provisional and temporary positions throughout the agency.