**Sonya A. ALMENDRAL,**
**Plaintiff-Appellant,**

v.

**NEW YORK STATE OFFICE OF MENTAL HEALTH, et al.,**
**Defendants-Appellees.**

**No. 711, Docket 83–7762.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 25, 1984.

Decided May 11, 1984.

As Amended June 13, 1984.

Krishna M. Vempaty, New York City, for plaintiff-appellant.

Robert L. Schonfeld, Asst. Atty. Gen. of the State of N.Y., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., George D. Zuckerman, Asst. Sol. Gen., Thomas P. Dorsey, Asst. Atty. Gen., New York City of counsel), for defendants-appellees.

Before LUMBARD, MESKILL and PRATT, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff-appellant Sonya Almendral appeals from an order of the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge*, granting defendants judgment on plaintiff's federal claims, and dismissing plaintiff's pendent state law claims. 568 F.Supp. 571 (S.D.N.Y.1983). Appellant Almendral's complaint alleged that appellee defendants, New York State Office of Mental Health, the New York State Department of Civil Service, the Manhattan Psychiatric Center

("MPC"), the Kingsboro Psychiatric Center ("KPC"), Dr. Gabriel Koz, John Frangos, L. Smith, Morton B. Wallach, Helen Houston and Edward Weeks, Jr., discriminated against her because of her race and national origin in violation of the fourteenth amendment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–(2) & (3), 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the New York State Constitution, Civil Rights Law, Civil Service Law, and Executive Law. Almendral asked that she be adjudged entitled to promotion, together with an award of back pay and damages. For the reasons that follow, we affirm in part, and reverse in part and remand.

Almendral, an Asian from the Philippines, began her employment at MPC in 1969 as a psychiatric social worker. After three months she was promoted to Social Worker Supervisor. In 1974, Almendral was promoted to Mental Hygiene Treatment Team Leader, a position she held at the time of the commencement of this lawsuit. By at least September 1977, Almendral had begun to seek the position of Chief of Mental Health Treatment Services ("Unit Chief").

## A. New York's Civil Service Rules.

Under New York's civil service rules, an individual may be appointed to a Unit Chief position from either the "promotion eligible" list or the "open competitive" list. These lists are made up of individuals who have taken one of two identical qualifying examinations for the position. The promotional test is for those already employed and in the civil service line, and the open competitive examination is for all other individuals desiring the position. *See* N.Y. Civ.Serv.Law §§ 51, 52 (McKinney 1983).

When an agency has a vacancy, lists of the eligible persons who have passed the promotional or open competitive qualifying examinations are compiled and certified to the agency. *Id.* § 60; N.Y.Admin.Code tit. 4, § 4.1 (1983). The listed persons are then canvassed to determine whether they wish to be considered for the agency's vacancy.

Generally, a candidate is promoted according to the "Rule of Three." N.Y.Civ. Serv.Law §§ 51, 61 (McKinney 1983); N.Y. Admin.Code tit. 4, § 4.2 (1983). First, the persons on the promotion eligible list are canvassed and interviewed. If there are at least three interested candidates or "acceptors" on the promotion eligible list, the agency must appoint one of the three highest or leave the position vacant. If, on the other hand, there are fewer than three promotion eligible list acceptors, the agency may select one of the three highest acceptors on either the promotion eligible list or the open competitive list.

## B. Almendral's attempts to be appointed Unit Chief.

Almendral was first canvassed for promotion in July 1978. At that time, there were apparently five Unit Chief vacancies at MPC, several of which had been filled "temporarily" by provisional appointments.[1] Four of these putatively provisional appointments, however, averaged fifteen months in duration, with the fifth lasting over seven and one-half years.[2]

Almendral had scored 80.6 percent on the promotional examination, and ranked nineteenth on the promotion eligible list. Of those persons on the promotion eligible list who were canvassed, ten indicated a willingness to accept the Unit Chief position, with appellant ranked fourth among the ten. Nevertheless, none of the acceptors were chosen and all five positions remained "vacant." The provisional appointees—four Caucasians, and one Asian—continued

1. The district court stated that there were four vacancies, but defendants' interrogatory answers appear to reveal at least five. *See* Answers to Plaintiff's Second Interrogatories, interrogatories 3, 5–7. These provisional appointees in July 1978 included M. Martin, Dr. B. Ganguly, Dr. D. Mavrovic, S. Rufer, and E. Puglisi. The discrepancy is not significant.

2. *Id.* In general, "provisional" or temporary appointments may be made under the civil service rules but not for periods greater than three to nine months. *See* N.Y.Civ.Serv.Law §§ 63, 64 (McKinney 1983).

in these positions though two or three had failed the open competitive examination.

Almendral was again canvassed for the Unit Chief position in late 1978. Twelve names were on the promotion eligible list certified to the MPC, but only two, including Almendral, were acceptors. Thus, under the Rule of Three, defendants could permissibly select an individual from the open competitive list as long as she had one of the three highest scores. Gayla Blackwell, a black woman with a perfect 100.0 score on the open competitive examination, was appointed Unit Chief from the open competitive list. Evidence was adduced at trial, however, that indicated defendants, in order to appoint Blackwell, had manipulated the civil service rules to prevent the total number of acceptors on the promotion eligible list from reaching three. Defendant Koz had pressured James Amorese to decline the position, and Margaret Marks' canvassing interview was not rescheduled as she requested after her interviewer failed to appear. Both Amorese and Marks were on the promotion eligible list; had either accepted, the Rule of Three would have prohibited the appointment of Blackwell.

Following this canvass, Almendral filed charges with the Equal Employment Opportunity Commission ("EEOC") on March 22, 1979, and with the New York State Division of Human Rights ("NYSDHR") on May 11, 1979, alleging that she had been denied the promotion because of her national origin.

As the district court did not consider allegations of misconduct occurring after Almendral's charges were filed in March 1979, the following account concerns principally unresolved allegations deduced from the record.

On April 17, 1979, shortly after she filed her discrimination charges with the EEOC, Almendral was appointed to a Unit Chief position at KPC for a twelve-week probation period. During this probation period, she received two unsatisfactory performance evaluations. Following the second unsatisfactory evaluation Almendral again filed charges with the EEOC and the NYSDHR, alleging that she had been harassed and intimidated in retaliation for her filing of EEOC and NYSDHR charges. KPC terminated plaintiff from her Unit Chief position at the end of her probation.

On July 29, 1979, shortly before her termination, Almendral requested that her name be restored to the promotion eligible list. In August 1979, Almendral returned to her position as Team Leader at MPC, where there was a Unit Chief position vacancy. Almendral, however, was not considered to fill the vacancy because she was not restored to the promotion eligible list until January 1980. Instead, James Amorese, who ranked 35th on the promotion eligible list, was appointed to the position.

Almendral asserts that she was passed over for promotion again in February 1980, when Paul Schwartz, who is white, was appointed Unit Chief. Almendral alleges that Schwartz was not on the open competitive or promotion eligible lists, and that there were no job postings to indicate that a vacancy existed. Appellant was interviewed twice in November 1980 without appointment, while Schwartz continued in this position until April 1981.

Almendral was next canvassed in March 1981, and was one of the three highest acceptors on the promotion eligible list. Margaret Marks, however, a white woman ranked 17th, was chosen.

Almendral was last unsuccessfully canvassed for promotion in November 1981. There were fewer than three acceptors on the promotion eligible list, and defendants selected Judith Nigro, a white woman, from the open competitive list. In April 1982, Almendral was appointed a Unit Chief at MPC.

C. Course of the litigation.

The EEOC and NYSDHR found no reasonable basis to support either plaintiff's claim of discrimination of her claim of retaliation. Plaintiff commenced this suit upon the issuance of a Notice of Right to

Sue on October 8, 1980, alleging both federal and pendent state claims. In July 1981, Almendral moved to amend her complaint to include claims relating to alleged acts of discrimination occurring subsequent to the filing of her original EEOC charges. In granting Almendral's motion on September 28, 1981, Judge Ward noted that the "subparagraphs she seeks to add all address the same alleged course of discrimination against the plaintiff as that contained in the original complaint...."

The case thereafter was transferred to Judge Sprizzo, who held a four-day bench trial beginning May 11, 1982. In an opinion dated July 29, 1983, Judge Sprizzo held that defendants were entitled to judgment on Almendral's federal claims. In reaching this holding, the district court restricted its resolution of the factual issues to pre-January 1979 conduct by the defendants:

> To the extent that plaintiff's Title VII claim is premised on racial discrimination and/or on defendants' failure to appoint or promote her at any time other than following the November 1978 canvass, the Court lacks subject matter jurisdiction to consider those claims since they were never presented to or investigated by the EEOC and were not within the scope of the EEOC investigation which reasonably could have been expected to grow out of the complaint filed with the EEOC.

568 F.Supp. at 575.

The district court went on to find that appellant may have failed to establish her *prima facie* case with respect to the July and November canvasses, and that, in any case, the defendants had established a legitimate nondiscriminatory reason for Almendral's nonselection. In addition, the trial court held that there was "no sound reason why [it] should retain pendent jurisdiction to resolve ... plaintiff's state law claims." *Id.* at 578.

On appeal, Almendral argues that the district court erred in (1) failing to address the alleged acts of discrimination that occurred after Almendral filed her EEOC complaint; (2) finding that there was no violation of section 1981; (3) finding that Almendral had failed to carry her burden of establishing a *prima facie* case of discrimination and that defendants had demonstrated a legitimate, nondiscriminatory reason for her rejection; and (4) dismissing, after trial, Almendral's state law claims. We affirm in part and reverse in part.

## DISCUSSION

A. Allegations Concerning Conduct After January 1979.

■■■ (1) *Title VII claims.* The district court held that it lacked subject matter jurisdiction over defendants' alleged conduct occurring after the Blackwell appointment, on the ground that these allegations weren't included in the original charges filed with the EEOC. Generally, a court may consider, in addition to the original EEOC charges, those claims "reasonably related" to the EEOC charges. *Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir.1980) (per curiam). In the instant case, defendants' alleged subsequent acts are essentially the same as the earlier allegedly wrongful conduct contained in the EEOC complaint: namely, alleged manipulation of the civil service rules for discriminatory reasons in order to appoint someone other than Almendral. As Judge Ward noted in permitting appellant to amend or supplement her complaint, "the add[itional allegations] all address the same alleged course of discrimination ... as that contained in the original complaint." In addition, Almendral's EEOC complaint plainly stated that the acts of discrimination were on a "continuing" basis. Thus, these subsequent acts were "reasonably related" or could "reasonably [have been] expected to grow out of the [EEOC] charge of discrimination." *Smith v. American President Lines,* 571 F.2d 102, 107 n. 10 (2d Cir.1978). Consequently we believe it was error for the district court to refuse to consider what took place after Almendral filed her complaint.

(2) *Section 1981 claims.* Similarly, the district court erred in failing to consider defendants' relevant subsequent acts in determining whether defendants intentionally discriminated against Almendral in violation of Section 1981, as such acts would seem probative on the issue of intent. On remand, the district court should consider and evaluate all alleged acts of discrimination from July 1978 to November 1981 in determining whether defendants intentionally discriminated against plaintiff in violation of Section 1981.[3]

### B. Almendral's Title VII Case.

■ Judge Sprizzo found that Almendral had met the first three prongs of the *McDonnell Douglas* test for establishing a *prima facie* case of discrimination, but had failed to establish the fourth: "that, after [complainant's] rejection ... the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (footnote omitted). The district court stated that "Gayla Blackwell was not· appointed from the promotional list and therefore did not have the same statutory qualifications as plaintiff." 568 F.Supp. at 575–76. It is difficult to discern the difference in statutory qualifications referred to by the district court, however, because the qualifying examinations for both the promotion eligible and open competitive lists were exactly the same. *See id.* at 573.

This determination, in any case, was not necessary to the district court's decision because it found that the defendants also had met "their burden of establishing a legitimate, nondiscriminatory reason for plaintiff's rejection." *Id.* at 576. This last conclusion was reached, however, without the considering defendants' post-January 1979 conduct. At least six alleged subsequent incidents of defendants' manipulation of the civil service rules and other asserted misconduct are relevant to the

issues of defendants' reasons for rejecting plaintiff and whether or not defendants "stated reason for [plaintiff's] rejection was in fact pretext." *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804, 93 S.Ct. at 1825. Accordingly, on remand the district court should reevaluate defendants' reasons for rejecting plaintiff in light of all the relevant evidence of defendants' misconduct.

### C. Dismissal of the Pendent State Law Claims.

■ Despite having heard all of the evidence on the claims at trial, the district court declined to address Almendral's state law claims involving improper manipulation of New York's civil service laws. Appellees' counsel admitted at oral argument that the evidence in support of the federal causes of action was virtually identical to the evidence in support of Almendral's state law claims. Although pendent jurisdiction is a matter of discretion, *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), "[i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants." *Id.* Nevertheless, the Supreme Court's recent pronouncement in *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), appears to warrant dismissal of the state claims.

■ In *Pennhurst,* the Court concluded that the eleventh amendment barred the federal district court from ordering state officials to conform their conduct to state law. *Id.* at ——, 104 S.Ct. at 910. In so doing, the Court stated:

> We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... We now hold that this principle applies as

---

**3.** Almendral has not appealed the dismissal of her section 1983 cause of action. Accordingly, this claim is deemed abandoned, *see Hermann*

*v. Moore,* 576 F.2d 453, 455 (2d Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978), and its dismissal is affirmed.

well to state-law claims brought into federal court under pendent jurisdiction.

*Id.* at ——, 104 S.Ct. at 919.

Almendral's assertion that New York's civil service, executive, and other statutory laws as well as its constitution were violated is "a claim that State officials violated state law in carrying out their official responsibilities." As such, the state law claims are barred by the eleventh amendment. Thus, they were appropriately dismissed.[4]

### CONCLUSION

In sum, we affirm the dismissal of Almendral's pendent state law claims, reverse the district court's entry of judgment against Almendral on her federal claims, and remand for further proceedings consistent with this opinion.

---

**4.** In any case, defendants have consented to suit in state court. *See* 568 F.Supp. at 578.