**David ZIEMBA, Plaintiff,**

v.

**Rodney SLATER, Secretary, United States Department of Transportation, Defendant.**

**No. 3:98 CV 918(GLG).**

United States District Court, D. Connecticut.

Feb. 10, 1999.

Helen G. Ullrich, Law Offices of Michael Sussman, Goshen, NY, for plaintiff.

Carolyn Ikari, Assistant U.S. Attorney, Hartford, CT, for defendant.

## OPINION

GOETTEL, District Judge.

Plaintiff David Ziemba has brought this employment discrimination case for actions that allegedly occurred while he was a Contract Specialist with the Coast Guard Academy ("Coast Guard") in New London, Connecticut. Defendant Rodney Slater, Secretary of the U.S. Department of Transportation, has moved to dismiss several of the claims raised in plaintiff's three-count complaint. First, defendant urges this Court to dismiss the claims in Counts Two and Three challenging plaintiff's termination for failure to exhaust administrative remedies. Second, defendant asserts that the claims in Counts One and Two alleging violation of the Americans with Disabilities Act should be dismissed for failure to state a claim. For the reasons discussed below, defendant's motion (doc. # 14) is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

Plaintiff began working for the Coast Guard in 1987 and at all times was supervised by Joy A. Simmons. For reasons not relevant to this motion, plaintiff's and 'Simmons' professional relationship deteriorated beginning in January 1995. From this point forward, plaintiff asserts that Simmons instituted a hostile campaign against him based on her belief that he was mentally ill. Compl. ¶¶ 25–39. As part of this campaign, plaintiff claims that he was given unsatisfactory job performance ratings. See id. ¶ 40. He was ultimately given notice of the Coast Guard's proposal to place him on enforced leave for 38 days, effective April 19, 1997. According to the notice, recent events led Simmons' supervisor, Cmdr. Theodore Montgomery, to believe that plaintiff's continued presence at work could be "injurious" to plaintiff or his co-workers or could be "detrimental to the interest of the Comptroller Division." Decision of the Administrative Law Judge ("ALJ") for the Merit Systems Protection Board ("MSPB") dated 6/30/98, Pl.'s Mem.Ex. 1, at 1.

After the completion of the enforced leave period, plaintiff was ordered to return to work on May 29, 1997. According to plain-

tiff, one condition of his return was that he had to meet weekly with Simmons to review his job performance. Compl. ¶ 58. In November 1997, Simmons gave plaintiff an unsatisfactory job performance evaluation, and recommended that he be removed from federal service. Plaintiff was officially terminated on January 11, 1998.

## PROCEDURAL BACKGROUND

On May 12, 1997, plaintiff filed an appeal with the MSPB of the Coast Guard's decision to place plaintiff on enforced leave. In this appeal, plaintiff also raised claims of perceived disability discrimination based on Simmons' and Montgomery's alleged belief that he was mentally ill. Plaintiff's appeal was heard by an ALJ of the MSPB in July 1997, but the ALJ did not issue a decision until this past June.

At the time plaintiff filed the MSPB appeal, he had not yet filed a formal complaint with the Equal Employment Opportunity ("EEO") office. He had, however, begun the EEO process by contacting an EEO Counselor while he was on leave in May 1997 to raise allegations of discrimination. He subsequently filed an EEO complaint based on perceived disability discrimination against the Coast Guard on July 10, 1997 (which was postmarked August 7, 1997). The Coast Guard dismissed this complaint on September 25, 1997 because plaintiff had already filed an appeal with the MSPB, and the agency must dismiss an EEO complaint when the employee has already elected to pursue his claims before the MSPB. 29 C.F.R. § 1614.107(d).

On May 18, 1998, plaintiff filed a three-count complaint in this Court. In Count One, plaintiff asserts that defendant violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. ("Rehabilitation Act"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), "when it discriminated against [him] based on its belief that he was mentally ill, creating a hostile work environment, placing him on enforced leave and publishing its belief of his mental unfit-

ness to coworkers and colleagues." Compl. ¶ 78. Count Two avers violations of the Rehabilitation Act and the ADA for perceived disability discrimination based on plaintiff's wrongful discharge. In Count Three, plaintiff asserts that defendant violated Title VII, 42 U.S.C. §§ 2000e et seq., and the Rehabilitation Act when it wrongfully discharged him in retaliation for filing lawful complaints of discrimination.

## DISCUSSION

Defendant now moves to dismiss the claims in Counts Two and Three arising under the Rehabilitation Act and Title VII for plaintiff's wrongful termination. Defendant also moves to dismiss the claims in Counts One and Two alleging violation of the ADA. We address each in turn.

### I. Title VII and the Rehabilitation Act

■ Defendant has characterized its motion to dismiss plaintiff's Title VII and Rehabilitation Act claims as one for lack of subject matter jurisdiction under Rule 12(b)(1). Generally, a plaintiff's failure to exhaust administrative remedies will deprive a federal court of subject matter jurisdiction. *Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The Second Circuit, however, has held that a plaintiff's timely filing of an EEO charge is not a jurisdictional prerequisite to suit in federal court, because the filing requirement functions as a statute of limitations, and is therefore subject to waiver, estoppel, and equitable tolling. *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir.1996); *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Thus, defendant's motion is properly considered a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Angotti v. Kenyon & Kenyon*, 929 F.Supp. 651, 653 (S.D.N.Y.1996).

■ On a Rule 12(b)(6) motion, a court must accept as true the complaint's factual allegations and must draw all reasonable inferences in favor of the plaintiff.[1] *Hernan-*

1. While a court may consider only the facts alleged in the complaint, a court may also rely on documents attached to the complaint as exhibits or incorporated into the complaint by reference.

*dez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). A court cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ For cases brought under Title VII or the Rehabilitation Act, federal employees must comply with the procedural requirements set forth in the implementing regulations. *Brown,* 425 U.S. at 832, 96 S.Ct. 1961; *DiMaggio v. United States Postal Serv.,* 643 F.Supp. 1, 6 (D.Conn.1984) (stating that the Rehabilitation Act incorporates the procedural requirements for Title VII cases). A federal employee who has been the subject of an adverse employment action and discrimination has two options. He can either raise both claims in a "mixed-case complaint" with the EEO office, 29 C.F.R. § 1614.302(d); *see* 29 C.F.R. § 1614.302(a)(1) (defining "mixed-case complaint"); or, he can file a "mixed-case appeal" [2] with the MSPB. 5 U.S.C. § 7702(a)(1). He cannot do both. 29 C.F.R. § 1614.302(b).

An employee choosing the MSPB route must file an appeal with the MSPB within 30 days of the effective date of the adverse employment action. 5 C.F.R. § 1201.22(b). If the MSPB fails to issue a decision on a federal employee's mixed-case appeal within 120 days of the date the employee filed the appeal, the employee may file a complaint with a federal district court. 5 U.S.C. § 7702(e)(1)(B); *see* 29 C.F.R. § 1614.310(h). Here, after Mr. Ziemba filed his MSPB appeal on May 12, 1997 to challenge his enforced leave, more than 120 days passed before the ALJ issued her decision. Thus, plaintiff's claims on the enforced leave issue are properly before us.[3]

Defendant contends, however, that plaintiff did not exhaust his administrative remedies on the wrongful discharge claims because he never raised them at the administrative level, either in an EEO complaint or in an MSPB appeal. Defendant asserts that, in the MSPB appeal, plaintiff raised only claims of perceived disability discrimination relating to the enforced leave. Thus, according to defendant, plaintiff is barred from raising the wrongful discharge claims before this Court.

In contrast, plaintiff asserts that the discrimination claims regarding his termination are properly before this Court because they are reasonably related to the allegations in the MSPB appeal on the enforced leave claims. *See Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984). In *Butts v. City of New York Department of Housing Preservation and Development,* 990 F.2d 1397 (2d Cir.1993), the Second Circuit described three exceptions to the exhaustion requirement. The first is a loose pleading exception which is not applicable here. The second exception is for claims alleging retaliation by an employer against an employee for filing discrimination complaints at the administrative level. Lastly, the third exception is for claims raising "further incidents of discrimination carried out in precisely the same manner alleged in the" administrative complaint. 990 F.2d at 1402–03.

## A. Perceived Disability Discrimination

■ Plaintiff argues that his wrongful termination claim in Count Two falls within the third *Butts* exception because the factual allegations underlying this claim address the same course of perceived disability discrimination as that contained in the MSPB appeal. *See Almendral,* 743 F.2d at 967. We agree.

Count Two of plaintiff's District Court complaint avers that defendant discriminated

*Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994). In this case we consider documents incorporated by reference such as plaintiff's MSPB appeal, the EEO complaint, and the ALJ's decision on the MSPB appeal.

**2.** A mixed-case appeal is "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because

of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302(a)(2).

**3.** Indeed, at this time, defendant does not challenge this Court's jurisdiction over the Rehabilitation Act claims in Count One based on plaintiff's enforced leave. Def.'s Mem. at 2.

against plaintiff, based on its belief that he was mentally ill, by wrongfully discharging him from his employment despite his many years of excellent service and his current capacity and qualifications to continue such service. The factual allegations supporting this claim relate to discriminatory performance evaluations. Plaintiff claims that immediately upon returning to work from the enforced leave, he was given an unsatisfactory job performance evaluation for the period during which he had been on enforced leave. Compl. ¶ 58. Based on this evaluation, plaintiff was required to meet with Simmons weekly to review his job performance. *Id.* Plaintiff also asserts that upon his return, defendant gave him new job specifications which were vague and unclear. *Id.* ¶ 59. According to plaintiff, Simmons refused to explain these new specifications to plaintiff or to regularly review plaintiff's job performance. *Id.* ¶ 60. Finally, plaintiff states that at the end of his new performance evaluation period in November 1997, Simmons again rated his performance as unsatisfactory and recommended his removal from federal service. *Id.* ¶ 61. Defendant formally terminated plaintiff's employment on January 11, 1998. *Id.* ¶ 64.

At the administrative level, the factual claims made in plaintiff's MSPB appeal relate to the Coast Guard's decision to place plaintiff on enforced leave. For example, plaintiff alleges that defendant suspended him and removed him from his job as a supervisory contract specialist, charged him with insubordination, and disciplined him during a meeting on January 24, 1997 in which he was presented with nine instances of alleged insubordination dating back to August 1996. He further asserts that defendant subjected him to micro-management, refused to tell him what was expected of him, gave him an unsatisfactory job performance rating, placed him on a performance improvement plan without explaining the performance standards, and subjected him to evaluation by employees who were not trained in the evaluation of employee performance.

Comparing the allegations made in plaintiff's District Court complaint with those in the MSPB appeal, we find that the wrongful termination claims before this Court for perceived disability discrimination are reasonably related to the allegations in the MSPB appeal with respect to the enforced leave. The District Court complaint describes acts taken after plaintiff was placed on enforced leave regarding discriminatory performance standards and performance evaluations. These acts are essentially the same, and address the same alleged course of perceived disability discrimination, as the earlier allegedly wrongful conduct contained in the MSPB appeal, which also relates to discriminatory performance standards and performance evaluations. *See Almendral,* 743 F.2d at 967; *Kegler v. Derwinski,* Civ. No. 90–1000, 1991 WL 41807 (E.D.N.Y. Mar.21, 1991) (finding that an employee's civil court claims that she was racially harassed at work were reasonably related to the claims in her EEOC complaint which alleged wrongful discharge based on race discrimination). Moreover, the wrongful acts described in both the civil complaint and the MSPB appeal were allegedly done by Simmons and Montgomery. *See Alfano v. Costello,* 940 F.Supp. 459, 469 (N.D.N.Y.1996) (discussing the factors under the third *Butts* exception, which include identity of individuals, identity of employers, and identity of circumstances). Accordingly, we find that plaintiff exhausted his administrative remedies on the Rehabilitation Act claim in Count Two.

Nevertheless, defendant argues that this case does not present a recurrence of a discriminatory pattern. Defendant asserts that the enforced leave decision was based on management's concern about plaintiff's behavior, including a determination made by a Threat Assessment Team that plaintiff posed a threat to himself and others and should not be in the workplace until he was cleared by a medical professional. In contrast, defendant contends that the decision to terminate plaintiff resulted from plaintiff's unacceptable job performance in a new performance evaluation period.

■ However, on a motion to dismiss, our job is not to determine "whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to sup-

port the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). Because we find that plaintiff has stated a valid ground for relief, we deny defendant's motion to dismiss the Rehabilitation Act claim in Count Two. *See Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994).

### B. Retaliation

■ In Count Three, plaintiff asserts a claim for wrongful discharge in retaliation for his lawful complaints of discrimination. Under the second *Butts* exception, the issue is whether the retaliation claim is within the scope of an earlier discrimination complaint. *Woods v. Alverez*, 657 F.Supp. 131, 132 (E.D.Pa.1987). The Second Circuit has repeatedly held that adverse employment actions taken in retaliation are generally considered reasonably related to the administrative charge. *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208–09 (2d Cir.1993); *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 411 (2d Cir.), *cert. denied*, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *see Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir.1981) (holding that a plaintiff's civil retaliation claim was reasonably related to his EEOC charge alleging age discrimination for a failure to promote); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980) (finding that an employee's civil court claim that he was denied employment in 1977 was reasonably related to his administrative claim in 1973 which charged refusal to hire, because he alleged that the subsequent acts were taken in retaliation for his earlier discrimination charge). In these circumstances, the exhaustion requirement is relaxed because of the "close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself." *Butts*, 990 F.2d at 1402.

Here, there is a close temporal proximity between when plaintiff filed his MSPB appeal and when he was notified of the proposed termination. Plaintiff filed his MSPB appeal on May 12, 1997 and the ALJ held a hearing on the appeal in July 1997. Defendant then gave plaintiff notice in November 1997 of its proposed decision to remove him from federal service. Moreover, plaintiff claims that the pattern of conduct he described in his MSPB appeal regarding perceived disability discrimination escalated until he was terminated in January 1998. *See Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1420 (S.D.N.Y.1989) (finding that a plaintiff's constructive discharge claim alleged in a civil complaint was reasonably related to sexual harassment charges contained in an EEOC complaint, because the employee had alleged that the "escalation of sexual harassment contributed to the plaintiff's constructive discharge"). Consequently, we find that plaintiff's retaliatory discharge claim is reasonably related to his MSPB appeal because the two actions stem from the same course of perceived disability discrimination. Thus, we deny defendant's motion to dismiss the claims in Count Three.

### II. Plaintiff's ADA Claim

■ Plaintiff raises two violations of the ADA relating to his enforced leave and wrongful discharge. Defendant argues that these claims should be dismissed under Rule 12(b)(6) because the ADA specifically excludes the federal government from coverage. 42 U.S.C. § 12111(2), 12111(5)(B)(i). The ADA imposes liability on employers, employment agencies, labor organizations, and joint labor-management committees. 42 U.S.C. § 12111(2); *see* 42 U.S.C. § 12112(a). As defined in the ADA, the term "employers" does not include the "United States [or] a corporation wholly owned by the government of the United States." 42 U.S.C. § 12111(5)(B). Because defendant Slater is the Secretary of the Department of Transportation, which is a U.S. Government agency, and was sued in his official capacity, he is not an employer for the ADA's purposes. *See Kemer v. Johnson*, 900 F.Supp. 677, 681 (S.D.N.Y.1995) (holding that the Administrator of the General Services Administration is not an employer under the ADA), *aff'd*, 101 F.3d 683, 1996 WL 219402 (2d Cir.), *cert. denied*, — U.S. ——, 117 S.Ct. 441, 136

L.Ed.2d 338 (1996). Consequently, we grant defendant's motion to dismiss the ADA claims in Counts One and Two.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (doc. # 14) is GRANTED IN PART on the ADA claims asserted in Counts One and Two and DENIED IN PART on the Rehabilitation Act and Title VII claims raised in Counts Two and Three.

**SO ORDERED.**