**Donald MAHONEY, Plaintiff,**

**v.**

**Joseph N. HANKIN, individually and as President of Westchester Community College, Westchester Community College, the County of Westchester, the Board of Trustees of Westchester Community College and Harold L. Drimmer, individually and as President of the Board of Trustees of Westchester Community College, Defendants.**

**No. 83 Civ. 755(CES).**

United States District Court,
S.D. New York.

Sept. 20, 1984.

Kramer, Levin, Nessen, Kamin & Soll, New York City, for plaintiff; Daniel P. Levitt, Michael J. Dell, New York City, of counsel.

Samuel S. Yagsur, Westchester County Atty., White Plains, N.Y., for defendants;

Eric D. Koster, Asst. County Atty., White Plains, N.Y., of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

The plaintiff, Donald Mahoney, brings this action against Joseph N. Hankin, individually and as President of Westchester Community College, Westchester Community College, the County of Westchester, the Board of Trustees of Westchester Community College and Harold L. Drimmer, individually and as President of the Board of Trustees of Westchester Community College. This action arises under the first and fourteenth amendments of the Constitution of the United States, sections 1 and 2 of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985(3) and the New York State Constitution.[1] Plaintiff alleges that his rights of free speech, privacy and procedural due process have been violated. He seeks both damages and injunctive relief. Defendants have moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set out below, defendants' motion is denied on both grounds.

Briefly stated, the undisputed facts are as follows. Plaintiff is a tenured political science professor at Westchester Community College where defendant Hankin is the president. Plaintiff had been a leader in union activities in the college until May 30, 1980 when a new union slate was elected. By letter of June 13, 1980 defendant Hankin informed plaintiff that his discussions of "current controversial college matters" in his classroom violated section 3.13 of the Collective Bargaining Agreement in that the discussions had no relation to the subject of political science.[2] Hankin's letter

---

**1.** Whether this court would be able to provide injunctive relief pursuant to state law is subject to serious doubt in light of the Supreme Court's decision in *Pennhurst State School & Hosp. v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), decided after this motion was fully submitted.

**2.** Section 3.13 of the Collective Bargaining Agreement is titled "Academic Freedom" and states in relevant part:

It is the policy of the College to maintain and encourage full freedom, within the law, of inquiry, teaching and research. In the exer-

also placed Mahoney "on official notice" that if he continued with such discussions, professional charges might be brought against him which could result in his "suspension, or other appropriate action." Hankin's letter was sent to Mahoney and seven other persons affiliated with the college.[3]

On June 19, Mahoney was informed by the college's personnel director that Hankin's letter would be placed in his personnel file. On June 26 and August 27, Mahoney wrote letters to Hankin requesting that Hankin detail what classroom discussions were deemed by Hankin to be impermissible. Hankin declined to provide any specifics in two subsequent letters. Plaintiff's counsel then attempted to invoke the grievance procedure and his right to arbitrate under the collective bargaining agreement. These requests were denied, however, as untimely. Finally, on April 15, 1983, after this lawsuit had been filed, Hankin wrote to Mahoney stating that he had not meant to place restrictions on Mahoney's exercise of academic freedom, that he had removed from Mahoney's personnel file the June 13 letter and all references thereto, and that a copy of Hankin's present (April 15, 1983) letter was being sent to each individual who received copies of the June 13 letter.

In support of their motion, defendants assert that plaintiff's claims have been rendered moot by Hankin's letter of April 15, 1983 and the removal from plaintiff's personnel file of the earlier objected to letters. We reject the mootness argument. First, the April 15 letter, written nearly three years after Hankin's June 13, 1980 letter, does not render nugatory plaintiff's claim that his past rights have been violated or, in other words, that he has a viable claim for damages. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533, at 272–73 (1975). Second, even with regard to plaintiff's prayer for injunctive relief, the letter of April 15 does not withdraw the threat made by Hankin in the June 13, 1980 letter that "if it comes to our attention again" Mahoney may be subject to suspension. In short, it is not at this juncture " 'absolutely clear' ... 'that the allegedly wrongful behavior could not reasonably be expected to recur,' " *Vitek v. Jones,* 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980) (citations omitted), thus making injunctive relief inappropriate.

Defendants next argue that the availability of contractual and administrative remedies bars plaintiff's action in this court. Defendants rely on *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), which held that the Court would not create a new judicial remedy for violations of a *federal* employee's first amendment rights since a congressionally created remedy already existed in the Civil Service Commission Regulations. We find *Bush* to be distinguishable. The present case was brought under 42 U.S.C. § 1983, which in itself is a congressionally created remedy. By its own terms the purpose of section 1983 is to provide a relief to persons whose civil rights have been violated under color of *state* law.[4] Thus, no new judicial reme-

cise of this freedom the faculty member may, without limitation, discuss his own subject in the classroom; he may not, however, claim as his right the privilege of discussing in his classroom controversial matter which has no relation to his subject.

3. The following persons were apparently sent copies of the June 13, 1980 letter: Richard Rosell, President, WCCFT; Louis Chicatelli, Faculty Senate President; Jerry Bucci, Chairperson, Department of Behavioral and Social Sciences; Dr. Elain Klein, Associate Dean; Dr. Sean Fanelli, Dean of Academic Affairs; Arthur Bell, Personnel Officer; Donald Pierce, NYSUT, Elmsford Office.

4. We note that in *Almendral v. N.Y. State Office of Mental Health,* 568 F.Supp. 571, 578 (S.D.N.Y. 1983), *aff'd in part, rev'd in part,* 743 F.2d 963 (2d Cir.1984), this court in dictum read *Bush* to deny a state employee the right to sue his employer under section 1983 for a violation of his first amendment rights. For the reasons stated, we do not concur in that analysis. Because *Almendral* did not appeal the dismissal of her section 1983 claim, the Second Circuit deemed the claim abandoned and affirmed its dismissal without reaching its merits. *Almendral,* 743 F.2d 963, at 968.

dy need be created to give cognizance to plaintiff's federal claims. Further, *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), held that exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. § 1983. Finally, in *McDonald v. City of West Branch,* — U.S. —, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Court held that in a section 1983 action a federal court cannot accord res judicata or collateral estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective bargaining agreement. Thus, the Court found that plaintiff's section 1983 action was not barred by the arbitrator's award. Although an arbitrator never reached a decision in the present case because the plaintiff's requests were dismissed as untimely, we find *McDonald* and *Patsy* controlling. Thus, plaintiff needed to exhaust neither the state administrative remedies nor the remedies under the collective bargaining agreement before the case could be heard in this court.

We now turn to the more difficult question of whether Mahoney has stated a claim in alleging that his first amendment rights of free speech and academic freedom have been chilled as a result of Hankin's actions and letters.[5]

In *Keyishian v. Board of Regents,* 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967), the Court recognized that academic freedom is "a special concern of the First Amendment." Because "[t]he classroom is peculiarly the 'marketplace of ideas,'" *id.* at 603, 87 S.Ct. at 683, "'vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools,'" *id.* (citation omit-

ted). The Court has found unfettered academic freedom to be particularly important at the university level. "To impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation." *Sweezy v. New Hampshire,* 354 U.S. 234, 250, 77 S.Ct. 1203, 1211, 1 L.Ed.2d 1311 (1957) (plurality opinion).

Yet, while academic freedom is recognized as a special concern of the first amendment, its parameters are not well-defined, especially with regard to a teacher's speech within the classroom. While the Supreme Court has developed the *Pickering* balance for a teacher's speech outside the classroom,[6] no such balance or standard has been formulated by the Court for speech inside the classroom. As a result lower courts have applied somewhat varying standards.

■ Courts agree, however, that the school's administration may at least establish the parameters of focus and general subject matter of curriculum. *See, e.g., Clark v. Holmes,* 474 F.2d 928 (7th Cir. 1972), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973). Accordingly, the first tier of analysis is whether the plaintiff's speech in his political science class was in fact related to the curriculum. The complaint alleges that the discussion of union activities on campus was part of the political science curriculum. Complaint ¶ 9. Thus, the allegations have satisfied this first tier.

The second tier of analysis is whether the college had the right to restrict the plaintiff from speaking in the classroom on "current controversial college matters" which were curriculum-related.[7] A series

---

5. Since this case involves free speech and academic freedom in the classroom, we find defendants' reliance on *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), misplaced.

6. In *Pickering v. Bd. of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Court balanced "the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public

services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734.

7. Since few non-tenure cases involving curriculum-related classroom speech at the college level have been decided, we look to secondary school cases. However, in contrast to the university, the secondary school must teach not only the academic areas but also community values and discipline and teach in accordance with the age and sophistication of the students. *See, e.g., Keefe v. Geanakos,* 418 F.2d 359 (1st

of cases has distinguished between the school administration's right to regulate curriculum content and the teacher's right to develop and use his or her own pedagogical method. *See, e.g., Parducci v. Rutland,* 316 F.Supp. 352 (M.D.Ala.1970); *Dean v. Timpson Independent School District,* 486 F.Supp. 302 (E.D.Tex.1979); *Sterzing v. Fort Bend Independent School District,* 376 F.Supp. 657 (S.D.Tex. 1972), *vacated on other grounds,* 496 F.2d 92 (5th Cir.1974). In dictum the Second Circuit has also opined that "[f]reedom to teach in the manner of one's choice is a form of academic freedom that is universally recognized, if not invariably protected, at the college level." *East Hartford Educational Association v. Board of Education,* 562 F.2d 838, 843, *vacated on rehearing en banc,* 562 F.2d 856 (2d Cir.1977). We infer from the complaint as alleged that the discussions of union activities were Mahoney's choice of pedagogical method for his political science course. *See* Complaint ¶ 14.

Both the First and Second Circuits have adopted methods for determining whether the legitimate interests of the authorities are sufficient to restrict a secondary school teacher's pedagogical choices. The First Circuit advocates a case-by-case inquiry to determine if a teacher's speech falls within first amendment protection. *Mailloux v. Kiley,* 448 F.2d 1242 (1st Cir.1971). The Second Circuit has developed a balancing test similar to that in *Pickering,*[8] which weighs the state's interests in restricting the in-class speech against the teacher's interests, with a special consideration placed on the teacher's exercise of his academic freedom. *East Hartford Educational Association v. Board of Education,* 562 F.2d 838, 843–44, *vacated on rehearing en banc,* 562 F.2d 856 (2d Cir.1977).[9]

Under neither of these two tests can we grant defendant's motion. The complaint alleges that Hankin objected to Mahoney's classroom discussions not because of curriculum concerns or concerns about his teaching method, but rather to silence him from expressing an idea with which the administration did not agree. Based on the allegations, we cannot say as a matter of law that the state interest in restricting Mahoney's classroom speech was sufficient to overcome any operative first amendment rights. Whether Mahoney in fact had a first amendment right to discuss the union activities can only be determined by a full examination of the facts.

■ If it is then determined such a right existed, it is a factual question whether Hankin's letter and actions 1) reflected a legitimate state interest,[10] and if not 2) whether they had a chilling effect on plaintiff's first amendment rights. *Aebisher v. Ryan,* 622 F.2d 651, 655 (2d Cir.1980). Here, the complaint alleges Hankin never specified the discussions he objected to and his initial letter contained threats of potential sanctions against Mahoney. *See NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) ("The threat of sanctions may deter [the] exercise [of first amendment freedoms] almost as potently as the actual application of [such] sanctions.").

Finally, we turn to the issue of whether the claims against the non-Hankin defendants should be dismissed. We find sufficient allegations in the complaint to support a cause of action against the non-Hankin defendants. *See* Complaint ¶¶ 11–13, 17, 22, 24–26. Thus, the issue of whether *respondeat superior* should apply need not be addressed at this point.

---

Cir.1969); *see generally,* Project, *Education and the Law: State Interests and Individual Rights,* 74 *Mich.L.Rev.* 1373 (1976); Note, *Academic Freedom in the Public Schools: The Right to Teach,* 48 *N.Y.U.L.Rev.* 1176 (1973).

**8.** *See* note 6 *supra.*

**9.** Although the en banc court on rehearing vacated the original panel's decision, it appears

that the court did not abandon the balancing approach. *See* 562 F.2d at 857.

**10.** We need not decide at this point what degree of judicial scrutiny the state interest must withstand in order to pass constitutional muster. *See generally,* E. Hartford Educ. Ass'n v. Bd. of Educ., 562 F.2d 856, 865–66 (2d Cir.1977) (rehearing en banc) (Oakes, J., dissenting).

Accordingly, the motion to dismiss is denied in all respects.

SO ORDERED.