1999-NMCA-117
988 P.2d 1252
**John DOE, Plaintiff–Appellee,**

v.

**Howard LEACH and Felix Rodriguez, Defendants–Appellants.**

**No. 18,638.**

Court of Appeals of New Mexico.

July 15, 1999.

Daymon B. Ely, Albuquerque, for Appellee.

Paula G. Maynes, Miller, Stratvert & Torgerson, P.A., Andrew S. Montgomery, Montgomery & Andrews, P.A., Santa Fe, for Appellants.

## OPINION

HARTZ, J.

{1} Howard Leach and Felix Rodriguez (Defendants) are former public employees. Plaintiff has sued them for damages under 42 U.S.C. Section 1983 (1994). Defendants claim they are entitled to qualified immunity because (1) they did not violate any federal right of Plaintiff's, or (2) if they did violate a federal right, the right was not clearly established at the time of their alleged misconduct.

{2} What makes this case unusual is its procedural posture. Defendants moved for summary judgment predicated on qualified immunity. The district court neither granted nor denied the motion. Rather, it postponed decision pending further discovery. Defendants petitioned this Court for a writ of error to review "the district court's determination not to consider their claim of qualified immunity." We granted the petition and now hold that the district court erred in deferring its decision while permitting further discovery. Because the record shows that Defendants were entitled to qualified immunity, we remand to the district court with instructions to enter judgment in favor of Defendants on the § 1983 claim.

## I. BACKGROUND

{3} In moving for summary judgment, Defendants did not challenge Plaintiff's essential allegations. We accept them as true for purposes of the appeal. Plaintiff was sexually abused by Father Edward Donelan while Plaintiff was a minor living at the Hacienda de los Muchachos from February 1971 to June 1973. The Hacienda was a private, nonprofit corporation operated as a facility of the Roman Catholic Church of the Archdiocese of Santa Fe. It provided residence, schooling, and religious instruction for troubled juvenile males. Donelan ran the Hacienda as an employee of the Archdiocese. Plaintiff was placed at the Hacienda by his father and grandmother on the advice ·of church officials.

{4} Before working at the Hacienda, Donelan had served as the chaplain at the New Mexico Boys' School in Springer, New Mexico. His service there ended on July 1, 1970, three months after Leach became Secretary of the State Department of Corrections. During the relevant time period Rodriguez was Deputy Secretary of the Department and Warden of the state penitentiary. Sometime in 1970, apparently after Donelan had left the Boys' School, Leach and Rodriguez received allegations that Donelan had sexually abused residents of the school. They reported the complaints to the Arch-

bishop, but not to any law enforcement agencies. The gist of Plaintiff's contentions is that Defendants' failure to report the allegations to the district attorney "permitted Donelan to continue working at Hacienda where he came into contact with and abused the Plaintiff."

{5} Plaintiff sued Defendants and others on a variety of theories. The claim at issue on appeal is his § 1983 claim against Defendants in their individual capacities. He alleges that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that they "were deliberately indifferent to the rights of Plaintiff and/or lacked professional judgment in failing to adequately investigate sexual abuse complaints about Donelan." On March 15, 1996, Defendants moved for partial summary judgment on the § 1983 claim. They claimed qualified immunity on three grounds: (1) the complaint failed to state a claim for violation of a federal right; (2) no federal right asserted in the complaint was clearly established by 1971; and (3) Plaintiff had not presented evidence that Defendants were deliberately indifferent to Plaintiff's rights or abdicated their professional judgment. They contended that they owed Plaintiff no duty under the Fourteenth Amendment to protect him from Donelan because Plaintiff had no custodial relationship with the State and because Defendants had not created the danger posed by Donelan or rendered Plaintiff more vulnerable to that danger. Plaintiff responded that the State had assumed sufficient control of Plaintiff to create a "special relationship" that imposed on Defendants a duty to protect him. Plaintiff also contended that Defendants created the danger to him posed by Donelan and that factual issues remained regarding whether Defendants had displayed deliberate indifference to Plaintiff's rights and had failed to exercise professional judgment.

{6} Two days before filing their motion for summary judgment, Defendants, together with other defendants who were parties at the time, filed a motion for protective order seeking a stay of discovery pending resolution of the immunity defenses raised in the various answers to the complaint. The district court conducted a hearing on the motion for protective order on April 30, 1996. The focus of the discussion was Plaintiff's notices of deposition for six persons, most of whom were social workers. Defendants contended that the proposed deponents could provide no information relevant to qualified immunity. Plaintiff responded that "their testimony may lead directly to the question of whether [Defendants'] actions were reasonable, which is the basis for the qualified immunity argument." The district court orally denied the motion.

{7} Two days later Plaintiff filed his response to Defendants' motion for partial summary judgment. Defendants filed their reply on May 20, 1996. Also on that date Plaintiff renoticed the depositions of the six witnesses for July 1 and 2, 1996. On June 20, 1996, Defendants filed a notice that they would not appear at the depositions and moved for reconsideration of the denial of their motion for protective order. The district court conducted a hearing on the motion on June 4, 1997, and on July 2 the court entered its order denying the motion. The order further stated: "[T]he parties will request new hearings on the pending Motions to Dismiss and Summary Judgment. The parties will supplement their original motions within twenty (20) days; their responses within forty (40) days; and their replies within sixty (60) days." On August 1, 1997, Defendants filed with this Court their petition for writ of error, seeking review of the July 2 order. We granted the petition on July 13, 1998. Defendants' briefs ask this Court to remand the case to the district court with directions to enter summary judgment on Plaintiff's § 1983 claims against them.

## II. QUALIFIED IMMUNITY

### A. General Propositions

■ {8} Section 1983 provides a cause of action against a person acting under color of state law who has violated one's rights under the United States Constitution or other federal law. *See* 42 U.S.C. § 1983. It is a federal statute creating a federal cause of action. Therefore, "[t]he elements of, and the defenses to, a [§ 1983 claim] are defined by federal law." *Howlett ex rel. Howlett v.*

*Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *see Carrillo v. Rostro,* 114 N.M. 607, 617 n. 9, 845 P.2d 130, 140 n. 9 (1992) (indicating that administration of the collateral order doctrine in a § 1983 action is governed by federal law).

{9} Section 1983 suits may be brought against government agencies, public officials in their official capacities, public officials in their individual capacities, and private persons. A suit against a public official in his or her official capacity is essentially a suit against the entity for whom the official works. *See Ford v. New Mexico Dep't of Pub. Safety,* 119 N.M. 405, 410–11, 891 P.2d 546, 551–52 (Ct.App.1994) (discussing suits against public officials in their official and individual capacities). Suits for damages are restricted by both the Eleventh Amendment to the United States Constitution and § 1983 itself; they cannot be brought against state agencies or against state officials in their official capacities. *See id.* Damage claims may, however, be brought against public officials in their individual capacities. *See id.* But such claims face serious obstacles.

{10} The United States Supreme Court has imposed stringent restrictions on damage suits under federal law against public officials in their individual capacities when the suits arise out of their performance of discretionary functions. It is, of course, necessary that the plaintiff prove that the defendant violated the plaintiff's rights. But that is not in itself sufficient. The defendant is entitled to qualified immunity unless the plaintiff demonstrates that the federal right so violated was a right "clearly established" at the time of the alleged violation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (suit against federal official); *Malley v. Briggs,* 475 U.S. 335, 340 n. 2, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (§ 1983 suit); *Romero v. Sanchez,* 119 N.M. 690, 692, 895 P.2d 212, 214 (1995) (same). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, the fact that an abstract right—such as the right to due process—is, in a sense, clearly established is not enough.

*See id.* at 639–40, 107 S.Ct. 3034. Although it is not necessary that "the very action in question has previously been held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. 3034 (citation omitted).

{11} The Supreme Court's justification for requiring that the right be clearly established is " 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.' " *Harlow,* 457 U.S. at 807, 102 S.Ct. 2727 (quoting *Butz v. Economou,* 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). The Court's concern is "that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.' " *Id.* at 814, 102 S.Ct. 2727 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. 1092; *accord Cockrell v. Board of Regents,* 1999–NMCA–073, ¶ 8, 127 N.M. 478, 983 P.2d 427 (Ct.App.1999).

## B. Procedural Protections

{12} The protection to the public official goes beyond the substantive standard for liability. The United States Supreme Court has also created unique procedural protections. Like all other defendants, public officials sued in their individual capacities may escape the burdens of a trial by obtaining a summary judgment. Unlike other defendants, however, such defendants in a § 1983 suit for damages are also often entitled to appeal immediately a trial court's denial of a defense motion for summary judgment. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Carrillo,* 114 N.M. at 615, 845 P.2d at 138; *Cockrell,* 1999–NMCA–073, ¶ 2, 127 N.M. 478, 983 P.2d 427. In an ordinary lawsuit, denial of a motion for summary judgment is not appealable; it is not a final order, and a nonliable defendant can obtain the relief to which it is entitled—avoidance of an improper adverse judgment—by appealing after the

trial. But a public official who is not liable because of qualified immunity is entitled to more than just avoidance of an adverse judgment. The official is entitled to avoid the litigation itself. The Supreme Court has "recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806; *accord Carrillo*, 114 N.M. at 615, 845 P.2d at 138. Hence, a public official ordinarily has a right to immediate appellate review of a denial of the official's motion for summary judgment based on qualified immunity. *But cf. Johnson v. Jones*, 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (no right to appeal district court's ruling that existence of genuine issue of fact precludes summary judgment based on qualified immunity). Under federal law the denial is considered a final order under the collateral order doctrine. *See Mitchell*, 472 U.S. at 526–29, 105 S.Ct. 2806. Under New Mexico procedure, the defendant may obtain review of such a denial by means of a petition for writ of error. *See Carrillo*, 114 N.M. at 616–19, 845 P.2d at 139–42; *Cockrell*, 1999–NMCA–073, ¶ 2, 127 N.M. 478, 983 P.2d 427.

■ {13} Moreover, "*Harlow* and *Mitchell* make clear that the [qualified immunity] defense is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such *pretrial* matters as discovery.'" *Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806). "'Until this threshold immunity question is resolved, discovery should not be allowed.'" *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727). Although discovery may not be particularly disruptive to government operations if the defendant is no longer a public official, the United States Supreme Court has not limited the protection against discovery to those still in office. In the leading case recognizing qualified immunity, the titled defendant had left government service. *See Harlow*, 457 U.S. at 803 n. 1, 102 S.Ct. 2727.

{14} With the above general propositions as background, we now address the specific issues before us.

## III. APPLICATION TO THIS CASE

### A. Availability of Writ of Error

■ {15} Although Plaintiff's answer brief does not challenge our grant of the petition for writ of error, we explain our exercise of jurisdiction to avoid confusion in the future.

{16} The district court did not deny Defendants' motion for summary judgment. It merely postponed the ruling. The delay is not in itself the ground for our granting the petition for a writ of error. The qualified immunity doctrine does not necessarily entitle a defendant to a prompt pretrial decision on immunity. Although there may be avenues of relief for a party to litigation who is unhappy about delay in making a ruling, a petition to this Court for a writ of error is not one of them.

■ {17} What justified the granting of the petition is that Defendants would be subjected to discovery pending the ruling on their motion for summary judgment because the district court refused to stay discovery. If Defendants were entitled to summary judgment because of qualified immunity, then requiring them to submit to discovery would violate that immunity. *See Behrens*, 516 U.S. at 308, 116 S.Ct. 834. The trial court should defer ruling on a claim of qualified immunity and permit further discovery only if the claim of immunity cannot be decided without resolution of particular factual questions and the discovery is "narrowly tailored" to those questions. *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir.1992). For that reason, federal courts permit defendants to appeal district court decisions requiring them to submit to discovery in circumstances like those present in this case. *See Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir.1987) (discovery order is appealable when defendant is clearly entitled to qualified immunity); *Workman*, 958 F.2d at 335–36 (defendant can appeal postponement of decision on qualified immunity because of burdens of pretrial discovery and trial); *cf. Valiente v. Rivera*, 966

F.2d 21, 23 (1st Cir.1992) (per curiam) (trial court refusal to address merits of qualified-immunity-based motion for summary judgment is appealable); *Musso v. Hourigan,* 836 F.2d 736, 741 (2d Cir.1988) (similar); *Craft v. Wipf,* 810 F.2d 170, 173 (8th Cir.1987) (per curiam) (similar). To decide whether the district court properly ordered discovery, the appellate court may examine the merits of the qualified-immunity defense. If the court determines that the defense is meritorious, it should not only reverse the district court decision compelling discovery, but also it should remand with directions to the district court to enter judgment for the defendant on the § 1983 claim. *See Valiente,* 966 F.2d at 24.

### B. Plaintiff's Right to Conduct Discovery

{18} Plaintiff contends that further discovery is necessary to determine whether Defendants have a legitimate claim of qualified immunity. He argues that the only ground upon which Defendants might be entitled to qualified immunity is that their decision not to report the allegations against Donelan was a reasonable exercise of professional judgment, but that further discovery was necessary on that issue. Defendants respond that there were two independent grounds for denying Plaintiff the right to conduct further discovery: (1) Plaintiff's assertion that he needed further discovery was not supported by affidavit, and (2) Defendants were entitled to qualified immunity even if they failed to exercise reasonable professional judgment.

{19} Defendants' first argument is based on Rule 1–056(F) NMRA 1999, which states:

**When affidavits are unavailable.** Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his position, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Relying on federal law interpreting the virtually identical Federal Rule of Civil Procedure 56(f), Defendants assert that a party who responds to a motion for summary judgment by claiming that further discovery is necessary must submit an affidavit supporting the claim. *See Jones v. City & County of Denver,* 854 F.2d 1206, 1210–11 (10th Cir.1988). Plaintiff fails to respond to this argument. Although Rule 1–056(F) may well provide an alternative ground for reversal in this case, we need not reach that issue because we are persuaded by Defendants' other argument. That is, we agree with Defendants that Plaintiff should have been barred from conducting further discovery because the discovery sought by Plaintiff could not alter the conclusion that Defendants were entitled to qualified immunity. We base our agreement on the following analysis of the qualified-immunity issue in this case.

### C. Are Defendants Entitled to Qualified Immunity?

{20} In evaluating a claim of qualified immunity we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, ——, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999).

{21} In support of his contention that Defendants' conduct violated clearly established law, Plaintiff relies on a statute and case law. The statute is NMSA 1953, Sections 13–9–12 to –14 (1965), which was in effect at the time Plaintiff was at the Hacienda. Although the statute related to reporting child abuse to the district attorney, it does not assist Plaintiff. First, the statute did not require anyone to report incidents of abuse; it stated only that the listed persons "may report" such matters. *See* § 13–9–13. Second, the persons listed were health professionals, teachers, social workers, and clergy; correctional officers, such as Defendants, were not mentioned. Third, and most importantly, § 1983 protects against violations of federal law only, not violations of state law. *See Garcia v. Las Vegas Med. Ctr.,* 112 N.M. 441, 443–45, 816 P.2d 510, 512–14 (Ct.App. 1991); *D.R. ex rel. L.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1375–76 (3d Cir.1992) (en banc) (alleged

violation of state law requiring officials to report child abuse does not support § 1983 claim). Even if Defendants violated the state statute, § 1983 would not afford Plaintiff a remedy.

{22} In any event, Plaintiff relies primarily on his reading of the case law regarding the right to due process under the Fourteenth Amendment. He points to two theories of due process liability—"special relationship" and "danger creation"—that have been recognized by the courts. *See, e.g., Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir.1998); *Sugg v. Albuquerque Pub. Sch. Dist.*, 1999–NMCA–111, ¶¶ 15–21, 128 N.M. 1, 988 P.2d 311 (Ct. App.1999). Plaintiff contends that he had a "special relationship" with Defendants that imposed upon them a constitutional duty to protect him from Donelan. He also contends that Defendants violated his constitutional rights by creating the danger to him posed by Donelan. To determine whether either theory applies here, we must examine the scope of those theories.

{23} The leading decision on the due process right to government protection against private violence is *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The suit was brought on behalf of a four-year-old boy whose father had repeatedly beaten him. State officials had temporarily assumed custody of the child but then returned him to his father. The complaint alleged that the officials knew of the danger and had violated the child's rights under the Due Process Clause of the Fourteenth Amendment. *See id.* at 192–93, 109 S.Ct. 998. The Supreme Court rejected the claim. It held that a government official's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. 998. The Court reasoned that because "the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 196–97, 109 S.Ct. 998.

{24} The plaintiff in *DeShaney* contended "that even if the Due Process Clause imposes no affirmative obligation on the State to provide the general public with adequate protective services, such a duty may arise out of certain 'special relationships' created or assumed by the State with respect to particular individuals." *Id.* at 197, 109 S.Ct. 998. The Supreme Court acknowledged that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198, 109 S.Ct. 998. But it limited those circumstances to occasions "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself." *Id.* at 200, 109 S.Ct. 998. This would occur only "through incarceration, institutionalization, or other similar restraint of personal liberty." *Id.* (The only restraint mentioned by the Court as possibly being a "similar restraint" was placement of children in foster homes operated by state agents after state removal of the children from their own homes; but the Court did not decide whether such foster care imposed duties on the state under the Due Process Clause. *See id.* at 201 n. 9, 109 S.Ct. 998.) Also, the Court pointed out that the child's injuries occurred while he was in the custody of his father, not the State. "While the State may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201, 109 S.Ct. 998.

{25} Turning to the case before us, Defendants' motion for summary judgment did not challenge the essential factual allegations in Plaintiff's complaint. We therefore accept those allegations as true. Comparing those allegations to the facts in *DeShaney*, it is hard to see how Defendants violated Plaintiff's right to due process by failing to investigate the allegations against Donelan or report them to the district attorney. At the time of the alleged assaults on Plaintiff, he was not under any state restraint that would give rise to a special relationship. He was not in state custody. There is no evidence of any state coercion involved in Plaintiff's placement at the Hacienda. The decision to place Plaintiff was made by his father and grandmother. Although Plaintiff points out

that the Hacienda was licensed by the State, he does not explain why such licensing converted his stay at the Hacienda to a term in state custody, nor does he cite any authority supporting that proposition. *Cf. Milburn v. Anne Arundel County Dep't of Soc. Servs.*, 871 F.2d 474, 476–78 (4th Cir.1989) (no § 1983 liability for abuse of child privately placed in state-licensed foster home).

{26} Also, Defendants did not create the danger to Plaintiff presented by Donelan. The gist of Plaintiff's claim is that Defendants failed to take action that could have stopped Donelan's alleged wrongdoing. Presumably, if his conduct had been reported to the proper authorities, he would have been prosecuted and prevented from working in intimate proximity with children. But if, as in *DeShaney*, returning a child to a vicious parent does not constitute creating a danger, then neither does permitting a person accused of criminal behavior to work in the private sector. While Defendants may have been aware of the dangers that Donelan posed, they "played no part in their creation, nor did [they] do anything to render [Plaintiff] any more vulnerable to them." *DeShaney*, 489 U.S. at 201, 109 S.Ct. 998. Thus, under either the special-relationship theory or the danger-creation theory, Defendants simply had no constitutional duty to protect Plaintiff.

{27} Moreover, the case law since *DeShaney* does not assist Plaintiff. Plaintiff has not cited any decision finding a "special relationship" in circumstances other than those noted in *DeShaney*—incarceration, institutionalization, and state-directed foster care. And most of the cases cited by Plaintiff in support of his contention that Defendants created the danger are actually helpful to Defendants. For example, Plaintiff relies on *D.R. ex rel. L. R.*, 972 F.2d at 1366, 1373. In that case, school officials failed to investigate allegations of molestation of two female students. The court held that the facts "show nonfeasance but they do not rise to the level of a constitutional violation." *Id.* at 1376. Perhaps the most helpful case for Plaintiff is *Reed v. Gardner*, 986 F.2d 1122 (7th Cir.1993). Police officers had arrested the driver of a car, leaving an intoxicated passenger in the car with the keys. The passenger then drove the car, causing a seri-

ous collision with another vehicle. Suit was brought on behalf of the injured and killed occupants of the other vehicle. *See id.* at 1123–24. The appellate court reversed the trial court's dismissal of the complaint. It held that the officers could be liable for violating the due process rights of the plaintiffs if the officers had created the danger by arresting a sober driver and leaving an intoxicated passenger with the car keys in the vehicle. *See id.* at 1125. It noted, however, that the defendants would be entitled to summary judgment if the evidence established that the arrested driver was also intoxicated, because "without state intervention, the same danger would exist." *Id.; see Nabozny v. Podlesny*, 92 F.3d 446, 459–60 (7th Cir.1996). The court reaffirmed that "[i]naction by the state in the face of a known danger is not enough to trigger" a duty under the Due Process Clause. *Reed*, 986 F.2d at 1125.

{28} In contrast to the absence of authority supporting Plaintiff's theory, a number of federal appellate decisions in recent years support Defendants' position. *See, e.g., Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C.Cir.1996) (per curiam) (no constitutional duty to protect child from abuse by mother's friend); *Walton v. Alexander*, 44 F.3d 1297, 1299, 1304–05 (5th Cir. 1995) (en banc) (no constitutional duty to protect student voluntarily residing at state school for the disabled from sexual abuse by classmate); *Stevens v. Umsted*, 131 F.3d 697, 701–05 (7th Cir.1997) (similar); *cf. Powell v. Georgia Dep't of Human Resources*, 114 F.3d 1074, 1076–80 (11th Cir.1997) (no clearly established constitutional duty to investigate and protect baby from abuse by mother and her boyfriend).

{29} In sum, the great weight of authority today is against Plaintiff's contention that his due process rights were violated. In any event, even if there were some doubt on that score, there can be no doubt that the rights he claims were not clearly established at the pertinent time. Plaintiff alleges that he was sexually abused by Donelan when Plaintiff lived at the Hacienda from February 1971 to June 1973. Therefore, Defendants are liable only if their actions, or failure to act, violated constitutional law that was clearly estab-

**36**

lished by June 1973. *See Anderson*, 483 U.S. at 639, 107 S.Ct. 3034. It is striking that the earliest court decision cited in Plaintiff's answer brief is from 1974. Plaintiff has totally failed to establish that "in the light of pre-existing law the unlawfulness must [have been] apparent." *Id.* at 640, 107 S.Ct. 3034.

{30} Accordingly, we hold that the record presented to the district court on Defendants' motion for summary judgment entitled Defendants to judgment in their favor on the ground of qualified immunity. There was no reason to delay ruling on the motion until Plaintiff took the scheduled depositions. To the extent that there were any disputed facts, they were irrelevant. Because Defendants had no clearly established constitutional duty to protect Plaintiff, it does not matter whether they exercised reasonable professional judgment in failing to protect him by investigating the alleged crimes and reporting them to the district attorney. The district court erred in denying Defendants' motion for a protective order staying discovery and in failing to grant Defendants' motion for summary judgment.

**IV. CONCLUSION**

{31} We hold that Defendants were entitled to summary judgment on the ground of qualified immunity and that the same qualified immunity protected them from any further discovery. We reverse the district court's denial of Defendants' motion for a protective order and remand this case to the district court with instructions to enter judgment for Defendants on the § 1983 claim.

{32} **IT IS SO ORDERED.**

WECHSLER and SUTIN, JJ., concur.