2002-NMCA-039

45 P.3d 46

**Donnie "Don" Ray LEACH, Plaintiff–Appellee,**

v.

**NEW MEXICO JUNIOR COLLEGE, et al., Defendants–Appellants.**

Nos. 20,770, 21,745.

Court of Appeals of New Mexico.

Feb. 19, 2002.

Certiorari Denied, No. 27,411, April 5, 2002.

Steven K. Sanders, Law Offices of Steven K. Sanders, Albuquerque, NM, for Appellee.

Mark Terrence Sánchez, Gary Don Reagan, P.A., William G.W. Shoobridge, Shoobridge Law Firm, P.C., Hobbs, NM, for Appellants.

## OPINION

WECHSLER, Judge.

{1} In this civil rights action claiming retaliatory termination from employment for exercising First Amendment rights, Defendants, the New Mexico Junior College (NMJC), its Board, and several of its officials, appeal from two orders partially denying their motions for summary judgment. Although the district court's orders are only partly favorable to his interests, Plaintiff Don Leach has not filed a cross-appeal. We address the following issues: (1) whether the district court improperly determined that NMJC is not an "arm of the state" such that its agents are not entitled to immunity from suit under the Eleventh Amendment; (2) whether the district court erred in partially denying Defendants' defense of qualified immunity; (3) whether Leach impermissibly failed to exhaust his administrative remedies; (4) whether Defendants should have been granted immunity from liability pursuant to NMSA 1978, § 21–1–18 (1957); and (5) whether the district court erred in concluding that Leach's claims involve speech on a topic of "public concern." We affirm.

*Facts*

{2} The following facts are pertinent to this appeal, and appear to be undisputed. Leach was employed at NMJC in a variety of capacities for over sixteen years. Throughout most of that period, he was a member of the NMJC administration. His duties varied

over the years, including oversight of the area vocational high school, the public information and marketing section, the college bookstore, the continuing education program, and the small business development center.

{3} Campus security was added to Leach's responsibilities in August 1996. After investigating the status of security and discipline at NMJC, Leach held a meeting on November 5, 1996 in order to discuss the matter with other members of the NMJC administration and staff. In a nutshell, Leach asserted that discipline was lax and NMJC was insufficiently dedicated to security as a whole. Defendant Charles Hays, who was president of NMJC at that time, disagreed strongly with Leach's position. The meeting adjourned after a heated exchange.

{4} On November 6, 1996, Hays drafted and sent a letter to the state legislature proposing to reduce the NMJC budget by eliminating Leach's position. Shortly thereafter, Hays informed Leach that he intended to recommend eliminating his position. On January 15, 1997, Hays made his recommendation, and the NMJC Board approved it. Pursuant to the grievance procedures outlined in the NMJC employee handbook, Leach appealed from the Board's decision, claiming that he was terminated in violation of his First Amendment right to freedom of speech.

{5} During the pendency of his appeal, Leach met with staff from the Hobbs News Sun to inform them about his concerns regarding campus security and disciplinary policies. Additionally, he reported possible misuse or misappropriation of college assets by Hays. The newspaper investigated these allegations and published several articles about them in mid-March. At about this time, Hays was placed on administrative leave, and the newspaper also published that information. Shortly thereafter, Leach spoke with officers from the Hobbs Police Department and the Lea County Sheriff's Department, which were also conducting investigations into the state of affairs at NMJC.

{6} On May 23, 1997, the NMJC Board held a hearing on Leach's appeal. The Board postponed its decision until June 9, 1997, at which time it concluded that Leach's constitutional right to freedom of speech had been violated. In accordance with the employee handbook, Leach was offered a new contract as coordinator of the small business development center. Apparently, this position represented a demotion in the administrative hierarchy from the directorship that he formerly held.

{7} On December 9, 1997, the NMJC Board met to consider annual contract renewals. On the recommendation of the acting president, the Board voted not to renew Leach's contract. The official reason for the termination reported to the Department of Labor was "lack of work." However, after Leach's termination, NMJC restored the position of director of the small business development center and named two people to fill the position jointly. Leach applied for numerous other positions with NMJC, including Director of Continuing Education, which department had been under his supervision while Leach was Dean of Administrative Services. He received neither an interview nor any offer.

{8} Leach did not appeal his second termination to the Board. Instead, he filed a civil rights action in district court pursuant to 42 U.S.C. § 1983 (1994 & Supp. V 1999), alleging that his employment was terminated in January and December of 1997 in retaliation for exercising his First Amendment rights. Defendants first filed a motion for summary judgment on the grounds of failure to exhaust administrative remedies, failure to establish that constitutionally protected speech was at issue, qualified immunity from suit, and statutory immunity from liability. On September 2, 1999, the district court denied summary judgment on Defendants' qualified immunity defenses, denied summary judgment for the remaining claims, and granted Plaintiff additional time to respond to an Eleventh Amendment claim of immunity raised in Defendants' reply. On October 4, 1999, Defendants petitioned for a writ of error, which this Court granted. The parties subsequently requested that the case be remanded to the district court for further development of the record. On August 16, 2000, the district court ruled on Defendants' motion for summary judgment rejecting the

Eleventh Amendment immunity claim and granting in part and denying in part Defendants' claims of qualified immunity. Defendants then applied for interlocutory appeal. We granted Defendants' application and consolidated both appeals.

*Standard of Review*

{9} "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992); *accord* Rule 1–056(C) NMRA 2002. The court must resolve all reasonable inferences in favor of the non-movant and must view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in a light most favorable to a trial on the merits. *See Carrillo v. Rostro,* 114 N.M. 607, 615, 845 P.2d 130, 138 (1992). For Defendants' immunity defenses, after we have reviewed the evidence in Plaintiff's favor, we ascertain whether the evidence is sufficient to sustain Plaintiff's claim as against Defendants' claim of immunity. *See Campos de Suenos, Ltd. v. County of Bernalillo,* 2001–NMCA–043, ¶ 10, 130 N.M. 563, 28 P.3d 1104. We review de novo the district court's application of the law to the evidence in arriving at its legal conclusions. *Id.*

{10} We first consider Defendants' defenses of immunity from suit. Although there were some procedural complexities with the appeal, we treat Defendants' contentions of qualified immunity and Eleventh Amendment immunity as before us pursuant to a writ of error. *See id.* ¶ 8. Because we hold that Defendants are not immune from suit, we then turn to the remaining issues, treating them as before us pursuant to an interlocutory appeal.

*Eleventh Amendment Immunity*

{11} Defendants contend that NMJC is an "arm of the state" for Eleventh Amendment purposes, such that they are not to be regarded as "persons" subject to suit under Section 1983. The Eleventh Amendment protects state agencies and their officials acting in their official capacities from suits for damages. *Whittington v. State*

*Dep't of Pub. Safety,* 2000–NMCA–055, ¶¶ 3–5, 129 N.M. 221, 4 P.3d 668; *Doe v. Leach,* 1999–NMCA–117, ¶¶ 9–12, 128 N.M. 28, 988 P.2d 1252. The Eleventh Amendment protects the state not only from liability, but more importantly, from the very burden of litigation. *Campos de Suenos, Ltd.,* 2001–NMCA–043, ¶ 15, 130 N.M. 563, 28 P.3d 1104. Although we review evidence in the light most favorable to a trial on the merits for appeals from summary judgment, a defense of Eleventh Amendment immunity requires that a plaintiff "affirmatively overcome the assertion of immunity." *Id.* ¶ 16.

{12} *Daddow v. Carlsbad Municipal School District,* 120 N.M. 97, 898 P.2d 1235 (1995), sets forth the guiding principles and frames the analysis. If NMJC is properly characterized as a "local governing body with specific discretionary powers and duties," it is to be regarded as a "person" subject to suit under Section 1983, and "it is not a true 'arm of the state' [such that it is] not entitled to the state's Eleventh Amendment protections." *Daddow,* 120 N.M. at 101–02, 898 P.2d at 1239–40.

{13} We apply a three-factor analysis derived from *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (which we will refer to as *Mt. Healthy* in conformity with our Supreme Court's previous usage in *Daddow* ). We consider: "(1) what the state law calls the entity; (2) whether the entity has political and financial autonomy; and (3) whether the entity operates like a political subdivision." *Daddow,* 120 N.M. at 103, 898 P.2d at 1241.

{14} The first factor yields a somewhat mixed result. NMJC is not designated as a state educational institution, university, or college in Article XII, Section 11 of the New Mexico Constitution, as are other New Mexico colleges, schools, and universities. However, it is defined as a "state educational institution" in the public finances statute. NMSA 1978, § 6–17–1.1(L) (1989). We tend to regard NMJC's absence from the constitutional listing of state educational institutions to be more compelling.

{15} The second factor, concerning the political and financial autonomy of NMJC, is more indicative. The NMJC Board has political autonomy insofar as it is vested with authority to supervise and control NMJC's assets, determine its educational and financial policies, including having the authority over disbursements, expenditures, scholarships, fees, and tuition. NMSA 1978, § 21–13–10(A)–(C) (2000). Although we recognize that the administration of NMJC is impacted by a variety of general, state-wide programs and commissions, including the general provisions relating to state educational institutions, NMSA 1978, § 21–1–2(A) (2000), and the state commission on higher education, NMSA 1978, § 21–13–11 (1999), we do not regard this degree of state involvement to be in any sense controlling because of its general nature.

{16} NMJC's authority over financial operations also indicates that NMJC enjoys a significant degree of financial autonomy. The NMJC Board has the power to independently issue local, district-wide general obligation bonds and to levy taxes on district residents. NMSA 1978, §§ 21–2A–5(A), 21–2A–6(A), (C) (1995), NMSA 1978, §§ 21–14A–3(C)(8) (1993), 21–14A–5.1 (1998). This taxation and bonding power weighs heavily in favor of NMJC's autonomy and against its characterization as an "arm[ ] of the state." *Daddow,* 120 N.M. at 103, 898 P.2d at 1241. The fact that NMJC receives legislative appropriations as an additional source of funding does not, in our estimation, counterbalance the significance of its taxation and bond issuance powers.

{17} The third and final *Mt. Healthy* factor also weighs against treatment of NMJC as an "arm of the state." Unlike constitutionally-identified state educational institutions, the NMJC Board members are not appointed by the governor. Rather, the NMJC Board is composed of five to seven resident members elected by popular vote from the school districts that form the NMJC district. NMSA 1978, § 21–13–8.1 (1987). As previously described, the NMJC Board also has powers to act autonomously with regard to general administration and financial affairs. As such, NMJC's opera-

tions more closely resemble the operations of a political subdivision than a true "arm of the state." *See Daddow,* 120 N.M. at 104, 898 P.2d at 1242.

{18} Thus, our analysis of the three *Mt. Healthy* factors leads us to conclude that NMJC is a "local governing body with specific discretionary powers and duties" under *Daddow,* 120 N.M. at 102, 898 P.2d at 1240, and is amenable to suit under Section 1983. The district court did not err in denying Eleventh Amendment immunity.

*Qualified Immunity*

{19} Defendants further argue that they are entitled to qualified immunity. The doctrine of qualified immunity limits claims for damages against public officials in their official capacities. *Doe,* 1999–NMCA–117, ¶¶ 9, 10, 128 N.M. 28, 988 P.2d 1252. Like Eleventh Amendment immunity, qualified immunity protects certain defendants not only from liability, but from the very burdens of being subject to litigation. *Id.* ¶ 12. We apply a two-part test to determine whether qualified immunity shields officials from individual liability under Section 1983. *Kennedy v. Dexter Consol. Sch.,* 2000–NMSC–025, ¶ 10, 129 N.M. 436, 10 P.3d 115. First, we ask whether the official's alleged conduct violated a constitutional right. *Id.* Second, we determine whether the constitutional right at issue was clearly established at the time of the alleged conduct. *Id.*

{20} In this case, the alleged conduct is discharge for reasons infringing Leach's constitutional right to freedom of speech. On its face, this allegation satisfies the first prong of the analysis. Defendants argue that Leach is required to come forward with something more concrete and substantial than abstract assertions of retaliatory discharge in order to overcome their presumptive entitlement to qualified immunity. However, the Supreme Court has explicitly rejected heightened pleading standards in this context. *Crawford–El v. Britton,* 523 U.S. 574, 594, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *and see Currier v. Doran,* 242 F.3d 905, 912–13 (10th Cir. 2001) (repudiating the heightened pleading requirement formerly applied by the Tenth

Circuit Court of Appeals to cases involving allegations of malice where qualified immunity is claimed). Although bare allegations of malice cannot defeat a claim to qualified immunity, *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), Leach has set forth numerous specific, non-conclusory, factual allegations that are clearly suggestive of retaliatory discharge. The most compelling among these allegations include: (1) that Hays wrote to the legislature recommending the elimination of Leach's position one day after Leach spoke at the November 5, 1996 staff meeting about his concerns relating to safety and disciplinary policies at NMJC; (2) that NMJC reestablished and expanded the position Leach filled between June and December 1997, the elimination of which was the basis for the termination of his employment on the second occasion, and hired two individuals to fill it after Leach left NMJC; and (3) that Leach was never given another interview at NMJC, notwithstanding the fact that he had direct experience overseeing departments such as the continuing education program which were seeking applicants. We recognize that such circumstantial evidence has its limitations, but we cannot generally expect or require a litigant in Leach's position to come forward at this stage with anything more. *Cf. Weidler v. Big J Enters., Inc.*, 1998–NMCA–021, ¶ 31, 124 N.M. 591, 953 P.2d 1089 (observing that direct evidence of an employer's motive will be rare, as a result of which circumstantial evidence must generally be relied upon to establish retaliatory employment action).

{21} We easily resolve the second prong of the qualified immunity test, clear establishment of the constitutional right at issue. "It is well established that a government employer may not discharge an employee for reasons that infringe his or her free-speech interests." *Martinez v. City of Grants*, 1996–NMSC–061, ¶ 15, 122 N.M. 507, 927 P.2d 1045. This rule is patently applicable in the context of state educational facilities. *See Carrillo*, 114 N.M. at 619–20, 845 P.2d at 142–43. "[A] teacher's public criticism of his superiors on matters of public concern may be constitutionally protected

and may, therefore, be an impermissible basis for termination of his employment." *Gomez v. Bd. of Educ.*, 85 N.M. 708, 713, 516 P.2d 679, 684 (1973). It is "settled, in New Mexico and throughout the nation, that a public employee ... has the right to speak on a matter of public concern." *Carrillo*, 114 N.M. at 620, 845 P.2d at 143. The only question is whether Leach's speech can be fairly characterized as a matter of public concern.

{22} Leach's speech concerned campus safety and disciplinary policies, which are also matters of public concern. *See, e.g., Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir.2000) (finding student discipline to be a matter of public concern); *Stever v. Indep. Sch. Dist. No. 625*, 943 F.2d 845, 850 (8th Cir.1991) (observing that student safety is a matter of public concern); *Rankin v. Indep. Sch. Dist. No. 1–3*, 876 F.2d 838, 843 (10th Cir.1989) (holding student discipline to be a matter of public concern). Defendants have therefore failed to establish their entitlement to qualified immunity.

### Exhaustion of Administrative Remedies

{23} Because Defendants were indeed subject to litigation, we examine Defendants' claims on interlocutory appeal. First, we address Defendants' claim that Leach impermissibly failed to exhaust his administrative remedies because it calls into question the district court's subject matter jurisdiction. *See Mitchell–Carr v. McLendon*, 1999–NMSC–025, ¶ 20, 127 N.M. 282, 980 P.2d 65. Defendants assert that Leach was required to submit an appeal to the NMJC Board after his second termination.

{24} Defendants rely on *McDowell v. Napolitano*, 119 N.M. 696, 700–01, 895 P.2d 218, 222–23 (1995), in support of their argument. In *McDowell*, appeal was taken from a jury verdict awarding damages for breach of contract, not civil rights violations. The portion of the opinion addressing the applicability of the exhaustion requirement pertained directly and exclusively to the successful breach of contract claim. Although the plaintiff had also brought a Section 1983 claim, the district court dismissed it on its merits before it

reached the jury, and the dismissal of that claim was upheld on appeal for reasons wholly independent of the question of exhausting administrative remedies. *McDowell* does not address the issue at hand.

{25} It is well established as a matter of federal law that exhaustion of state remedies is not a prerequisite to bringing suit pursuant to Section 1983. *Patsy v. Bd. of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Hopkins v. Okla. Pub. Employees Ret. Sys.,* 150 F.3d 1155, 1160 (10th Cir.1998) (observing that "it is more than well-settled that a plaintiff under 42 U.S.C. § 1983 need not exhaust his administrative remedies before filing suit"). This rule is equally applicable in state court. *Felder v. Casey,* 487 U.S. 131, 148, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). Although Defendants urge a narrow reading of *Patsy* and *Felder,* limiting their application to state administrative agency remedies and preserving the enforceability of contractually-mandated administrative remedies, the federal interest in judicial resolution of disputes involving freedom of speech is too strong to permit such a result. To the best of our knowledge, most, if not every court that has considered this issue, has reached a similar conclusion. *See Butcher v. City of McAlester,* 956 F.2d 973, 978–79 (10th Cir.1992) (holding that plaintiffs were not required to exhaust contractual grievance procedures before filing suit pursuant to Section 1983); *Narumanchi v. Bd. of Trs.,* 850 F.2d 70, 73 (2d Cir.1988) (holding that exhaustion of grievance procedures set forth in a collective bargaining agreement was not prerequisite to bringing an action under Section 1983); *Hochman v. Bd. of Educ.,* 534 F.2d 1094, 1097 (3d Cir. 1976) (holding that a plaintiff was not required to exhaust contractual grievance procedures prior to filing suit under Section 1983); *Bonnell v. Lorenzo,* 81 F.Supp.2d 777, 778 (E.D.Mich.1999), *rev'd on other grounds,* 241 F.3d 800 (6th Cir.2001); *Mellody v. Upper Merion Area Sch. Dist.,* 1998 WL 54383 (E.D.Pa.1998), *aff'd,* 216 F.3d 1076 (3d Cir. 2000); *Scheideman v. Shawnee County Bd. of County Comm'rs,* 895 F.Supp. 279, 281 (D.Kan.1995); *Nasson v. Van Winkle,* 1994 WL 175049, *3 (D.Mass.1994); *Mahoney v. Hankin,* 593 F.Supp. 1171, 1174 (S.D.N.Y. 1984). The doctrine of exhaustion of administrative remedies does not apply to bar the litigation of Leach's Section 1983 claim.

*Statutory Immunity Under Section 21–1–18*

{26} The members of the NMJC Board argue that Section 21–1–18 grants them immunity from personal liability in this case. Section 21–1–18 provides that "[m]embers of the boards of regents of the educational institutions of the state shall not be held personally liable in any action at law based upon a claim for damages arising out of any act or failure to act of that board of regents."

{27} Although Section 21–1–18 might confer immunity in another context, such state statutory provisions are ineffective against a Section 1983 claim. As a matter of federal preemption, the United States Supreme Court held in *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), that state law cannot immunize persons from liability under Section 1983. *See also Howlett v. Rose,* 496 U.S. 356, 376–77, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Felder,* 487 U.S. at 139, 108 S.Ct. 2302. The Tenth Circuit Court of Appeals has been equally clear on this point. *See Palmer v. City of Monticello,* 31 F.3d 1499, 1504 (10th Cir.1994). The district court was correct in its conclusion that Section 21–1–18 does not grant members of the NMJC Board immunity from Leach's Section 1983 claim.

*Leach's Speech as a Matter of Public Concern*

{28} Finally, to state a Section 1983 claim, Leach must establish that Defendants, "under color of law, acted to deprive him of rights, privileges, and/or immunities accruing to him under the United States Constitution." *Chavez v. City of Albuquerque,* 1998–NMCA–004, ¶ 10, 124 N.M. 479, 952 P.2d 474. As previously stated, Leach bases his Section 1983 claim on an assertion of retaliatory discharge in violation of his First Amendment rights. However, Leach must demonstrate that the speech at issue addresses a matter of "public concern," and that the NMJC's interest in preserving an efficient and productive workplace does not

outweigh his free-speech interest. *See Garcia–Montoya v. State Treasurer's Office*, 2001–NMSC–003, ¶ 27, 130 N.M. 25, 16 P.3d 1084. We evaluate these matters as questions of law. *Id.* On appeal, Defendants only challenge the district court's determination with regard to Leach's satisfaction of the "public concern" element.

{29} The speech at issue in this case concerns campus security and discipline and misappropriation of NMJC assets. In order to determine whether Leach's speech involves a matter of public concern, we must evaluate "the content, form, and context" of the speech to ascertain whether it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

{30} Leach's speech on the topic of misappropriation of NMJC assets satisfies the public concern test. Speech calculated to disclose malfeasance or wrongdoing on the part of a public official is speech of public concern. *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224–25 (10th Cir.2000); *Schalk*, 906 F.2d at 495; *Wulf v. City of Wichita*, 883 F.2d 842, 857 (10th Cir.1989). Defendants have failed to present any evidence or argument to suggest that the content, form, or context of Leach's speech on this topic should not constitute speech on a matter of public concern.

{31} Similarly, Leach's speech concerning campus safety and disciplinary policies is entitled to First Amendment protection as addressing matters of public concern. *See, e.g., Leary*, 228 F.3d at 737; *Stever*, 943 F.2d at 850; *Rankin*, 876 F.2d at 843; *and cf. Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 553 n. 4 (2d Cir.2001) (regarding the safety of participants in a youth program as a matter of public concern). Although Defendants contend that Leach's speech on these matters was motivated by personal conflict with other members of the NMJC administration, such that it should not be regarded as speech involving a matter of public concern, the record contains ample evidence to the contrary. Leach's affidavit testimony, corroborated by a thorough cata-

logue of disturbances on campus and a detailed agenda for the November discussion, indicates that Leach's speech about safety and discipline on campus was motivated by genuine concerns, legitimately developed and substantiated in the course of his duties as Director of Security. This evidence is sufficient to outweigh the vague assertions of unprofessional conduct and personal conflict upon which Defendants rely. The district court did not err in concluding the speech involved a matter of public concern.

*Conclusion*

{32} We affirm the district court on all issues.

{33} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and IRA ROBINSON, Judges.